## JIMMIE L. WALTERS v. STATE OF ARKANSAS

CR 73-116                    503 S.W. 2d 895

### Opinion delivered January 21, 1974

*J. H. Cottrell* and *Floyd J. Lofton,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings Jr.,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Based upon the conduct of the trial court in discharging a jury and granting a new trial, the appellant Jimmie L. Walters seeks to set aside his subsequent second degree murder conviction upon the ground of former jeopardy or at least to reduce the conviction thereof to a degree not greater than involuntary manslaughter.

The record before us as to what occurred in the first trial is rather meager. The portion upon which appellant relies is set forth in a motion to dismiss as follows:

"That at the conclusion of the first trial of this defendant, the jury retired to deliberate a verdict and during the course of said deliberation, the Jury reported to the Court that they could not reach a deci-

sion and were hung. While determining whether the jury could reach a verdict, the following conversation between the Court and the Jury Foreman occurred:

COURT: Have you reached a verdict?

FOREMAN: No sir.

COURT: What are your numbers now?

FOREMAN: 7 to 5.

COURT: Ladies and gentlemen of the jury, I know some Courts follow the procedure of locking up juries and keeping them for days and often times by doing it, they get a verdict, but this Court doesn't believe in that. I believe that's subjecting you to torture. That's not what you are down here for, to be tortured. You are just citizens doing your duty. You have told me there were two things you were considering—guilt or innocence?

FOREMAN: Yes sir.

COURT: If the proposition had been voted on, what would have been the degree?

FOREMAN: About the least.

COURT: You mean you were hung up between involuntary manslaughter and not guilty?

FOREMAN: Yes sir."

The doctrine of former jeopardy has been set forth in *Atkins* v. *State,* 16 Ark. 568, 578 (1855) in this language, quoting from the still leading case of *United States* v. *Perez,* 9 Wheat. 579, 6 L. Ed. 165 (1824):

" 'We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into

consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life in favor of the prisoner. But, after all, they have the right to order the discharge, and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests in this, as in other cases, upon the responsibility of the judges under their oath.' "

We do not read anything in *Gori* v. *United States,* 367 U.S. 364, 81 S. Ct. 1523, 6 L. Ed. 2d 901 (1961), nor in *United States* v. *Jorn,* 400 U.S. 470, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1970), as holding to the contrary.

Because of the fact the trial court went beyond the determination that the jury was hung between guilt and innocence and determined that they were hung between a verdict of involuntary manslaughter and not guilty, appellant suggests there was a preoccupation by the trial court in helping the prosecution obtain a conviction. While we must admit that the inquiry was inadvisable, we cannot read appellant's suggestion into this meager record. It appears to us that the trial court had already indicated that he was going to grant a mistrial before making the inquiries as to involuntary manslaughter and not guilty. On the meager record before us we cannot say that the trial court abused his discretion in determining that the jury was hopelessly deadlocked. Consequently, we need not speculate as to what our conclusion would have been had such information been first obtained or had the record shown how long the jury had been deliberating.

Neither can we agree with appellant that the first trial resulted in an implied acquittal of all degrees in excess of involuntary manslaughter. The statements between

the trial court and the jury foreman cannot be considered under the circumstances as a verdict of the jury. See Ark. Stat. Ann. § 43-1226 (Repl. 1964).

Affirmed.

HARRIS, C.J., not participating.