Per Curiam.
 

 In this article 78 proceeding, appellant Charles Oliver (Oliver) requests that the respondents be prohibited from prosecuting him under a pending indictment charging him with murder. A prior trial on this charge ended with the trial court’s declaration of a mistrial based on a hung jury. Oliver argues first that, in effect, there was a jury verdict of acquittal; and second, that the court’s declaration of a mistrial was improper; that he was therefore placed in jeopardy and cannot be tried again. Though the circumstances surrounding the jury’s announcement of its deadlock were unusual, we are not persuaded by Oliver’s arguments and we would affirm the judgment of the Appellate Division denying petitioner’s application.
 

 Oliver was tried on the single count of murder. At the close of the evidence, the trial court submitted to the jury the murder count and the lesser included offense of manslaughter in the first degree. In charging the jury, the court stated: “ If you are not convinced beyond a reasonable doubt that the defendant is guilty of the crime of murder
 
 or if you are unable to agree on a verdict as to that charge,
 
 then you should pass to a consideration of the so-called lesser included offense that I am submitting to you, the crime of Manslaughter in the First Degree.” (Emphasis added.)
 

 The jury returned to the courtroom at approximately 6:00 p.m., seven hours after they received the case. At this time, in response to the court’s question, the foreman stated that a partial verdict had been reached. In answering the questions of the court, the foreman did not indicate which of the two
 
 *56
 
 counts had been decided, or whether the result on the decided count was guilty or not guilty. Having ascertained in this fashion the status of the jury’s deliberations, the court stated “ you will resume your deliberations promptly after dinner. ’ ’ Following dinner, the jury returned to its deliberations without any further instructions. At 9:00 p.m., and again at 10:40 p.m., the jury re-entered the courtroom. On each occasion, when the foreman was asked if the jury had agreed upon a verdict, he answered, “No, sir.” The court was informed that the jury was “ hopelessly deadlocked ” at 10:40 p.m., but excused the jurors for further deliberations. At midnight, the jury returned to the courtroom and the foreman informed the court that the jury was deadlocked and that further deliberations would not be useful. Thereupon, the court declared a mistrial and discharged the jury.
 

 In none of the postdinner communications between the court and the jury, including the final colloquy, was the previously discussed partial verdict mentioned by the court, the jury, the prosecution, defense counsel, or the defendant. However, the day following the trial, defense counsel moved “ to dismiss the murder count ” arguing that he had spoken to seven or eight jurors who had advised him that there was unanimity for a not guilty verdict on the murder count and that the jury had divided evenly as to the manslaughter count. The court denied this motion on the ground that the record contained no basis for concluding that the jury had decided to acquit on the murder count. The appellant subsequently instituted this article 78 proceeding for prohibition. He has submitted affidavits of 9 of the 12 jurors, including the foreman, which state that the original partial verdict was acquittal of the murder charge and that: “ [W]hen the jury foreman stated to the Court that we had not reached a verdict, he was referring to the fact that we did not agree to a verdict on the charge of manslaughter in the first degree. However, our verdict of not guilty on the murder charge remained final until the jury was discharged from further deliberation.”
 

 Contrary to appellant Oliver’s first contention, it is impossible, without considering these affidavits, to ascertain from the record the nature of the jury’s original partial verdict. It is true that the counts were alternative and that Oliver could not
 
 *57
 
 be convicted of both counts (CPL 300.50). However, it is incorrect to reason from this that the partial verdict could not have been a conviction. The jury might have considered the murder count, deadlocked, and then proceeded to consider the manslaughter count, reaching a verdict of guilty. It could then have returned to the murder count once again. Of course, if the jury eventually settled upon a verdict of guilty as to murder, the manslaughter verdict would have to be abandoned. The point is that when the jury announced it had a verdict as to one count, that verdict might have been acquittal as to murder, guilt as to manslaughter, or acquittal as to manslaughter. Only guilt on the murder count could be eliminated, since on such a verdict no further deliberations would be necessary if the jury properly understood its instructions. It is further to be noted that whatever the actual substance of the jury’s partial verdict, the decision upon the defendant’s guilt or innocence was not announced in court by the foreman and consequently was not recorded on the minutes. Thus, on the present facts there was no “ verdict (See CPL 1.20, 310.40, 310.80.)
 

 Of course, the affidavits of the nine jurors make clear the actual course of the jury’s deliberations. However, for reasons discussed below, the defense here is estopped by its trial conduct, if for no other reason, from using these affidavits to controvert the jury’s in-court declaration that it was deadlocked.
 

 Oliver’s second contention is that retrial would place him in double jeopardy. He argues that the court improperly discharged the jury and consequently the usual deadlocked-jury exception to the guarantee against double jeopardy is not applicable.
 

 A deliberating jury may be properly discharged before rendering a verdict if it has deliberated extensively “ without agreeing upon a verdict with respect to any of the charges submitted ”, and agreement is unlikely within a reasonable time. (CPL 310.60.) If the jury was deadlocked as to 'both counts, it was properly discharged and the double jeopardy claim fails.
 

 Both parties agree that the court’s refusal to accept the partial verdict at 6:00 p.m., when further deliberations were contemplated, was authorized by CPL 310.70 (subd. 1, par. [b], cl. [ii]). This section also provides that upon refusal to accept a partial verdict, the jury be ordered to resume its delibera
 
 *58
 
 tions on the “ entire ease Here, the trial court gave no such order, and the jury may or may not have understood that it could properly reopen consideration of the verdict already reached.
 

 The difficulty in the present case is that, in light of the foreman’s earlier statement that there was a partial verdict, and the absence of instructions directing deliberations upon the entire case, the jury’s later declaration that it was deadlocked is ambiguous. Following the partial verdict, it may have deliberated on the entire case and in so doing abandoned the previous agreement; or it may have left the previous agreement intact and continued deliberations only as to the unresolved count. It’s announcement that it was
 
 “
 
 deadlocked ” would be consistent with either alternative.
 

 The defense, however, had the opportunity of clarifying this ambiguity and did not do so. When the foreman informed the court that the jury had reached a partial verdict, neither defense counsel nor the defendant requested that the jury be asked to state what that verdict was. Similarly, when the foreman later declared the jury to be deadlocked, the defense failed to request that the jury be asked to declare the current status of the partial verdict mentioned earlier. Having displayed no enthusiasm for the rendering of a partial verdict while the jury was still impaneled, and a guilty verdict still possible, the defense may not seek to overturn the court’s order of mistrial after discharge of the jury, when it has the obvious option of disregarding the “ verdict by affidavit ”, should it be unfavorable.
 

 Of course, the ambiguity inherent in this situation, where the partial verdict was more ignored than refused, is not desirable. Following a court’s refusal to accept a partial verdict pursuant to CPL 310.70 (subd. 1, par. [b], cl. [ii]), the jury should be clearly instructed that its further deliberations may be upon the entire case, including that portion upon which they had previously agreed. Once a partial verdict has previously been refused, the court should ascertain, before discharging the jury at a subsequent time, whether the jury is then in agreement as to a partial verdict, or whether it is truly deadlocked upon all counts and as to all parties. If the jury still has a partial verdict, and the court is of the opinion that further deliberations would not be likely to produce ultimate agreement and wishes
 
 *59
 
 to discharge the jury as deadlocked, the partial verdict must then he accepted. (CPL 310.70, subd. 1, par. [a].)
 
 *
 
 Here the defense’s failure to request clarification of the jury’s announcement indicates that it preferred to assume the jury was deadlocked as to the entire case. We hold the defendant to this assumption.
 

 Accordingly, the judgment of the Appellate Division should be affirmed.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Rabin and Stevens concur in
 
 Per Curiam,
 
 opinion.
 

 Judgment affirmed, without costs.
 

 *
 

 CPL 310.70 (subd. 1, par. [a]) requires that any extant partial verdict be accepted before the jury is discharged. We do not see the problem in this case as being in the statute, as did the Appellate Division majority, but rather in the failure of the court, and the parties, to ascertain whether or not the jury still had a partial verdict.