STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT, V. BEN M.
HALSEY, APPELLANT AND CROSS-APPELLEE.

441 N.W.2d 877

Filed June 23, 1989.    No. 88-859.

James L. Birkel, of Egr and Birkel, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

Sometime during the early morning hours of July 4, 1987, Ramona S. Vyhlidal was brutally beaten about the head and face and was choked while asleep in her trailer home in Bellwood, Nebraska. That morning, the victim was discovered lying on the floor of the trailer by her then 11-year-old daughter, Wendy. When Wendy asked what had happened, the victim said, "Ben was here," and told Wendy to call an ambulance.

Wendy ran to Lawrence Bazer's trailer home, which was nearby, and told the Bazers to call an ambulance. Bazer then went to the victim's trailer home, where the victim told Bazer, "Ben did this to me."

The defendant, Ben M. Halsey, was arrested and charged with attempted first degree murder and first degree assault. Trial to a jury commenced on April 25, 1988. The case was submitted to the jury at 2:30 p.m. on April 28, 1988. Five verdict forms were given to the jury, which permitted the jury to find the defendant guilty of assault in the first degree, not guilty of assault in the first degree, guilty of attempted murder in the first degree, guilty of attempted murder in the second degree, and not guilty of attempted murder in the first or second degree. The jury was not given a verdict form which would have permitted the jury to find the defendant not guilty of attempted murder in the first degree but guilty of attempted murder in the second degree.

At 3:45 p.m. on April 28, 1988, the jury requested that the jury be allowed to hear the tape recording of the testimony of some of the witnesses. The State objected to this request, and the trial court advised the jury that the tape recording of the evidence could not be played back to the jury. The jury was

instructed to return to the jury room and continue with its deliberations.

At 5:10 p.m. on April 29, 1988, the foreman of the jury reported that the jury was divided 10 to 2 and that he believed further deliberations would not result in any change. The trial court instructed the jury to recess for dinner and then reconvene and reread the instructions.

At a hearing on June 8, 1988, the bailiff testified that on the evening of April 29, 1988, after the jury had returned from dinner, the foreman asked her to tell the trial court that the jury was unanimous on one count. The bailiff gave the message to the trial court, which then stated, "[T]hey needed to complete the other count." The bailiff then gave that message to the foreman of the jury. At the same hearing, the foreman of the jury testified that the jury was unanimous in finding the defendant not guilty of first degree attempted murder. The jury, however, was not unanimous on attempted murder in the second degree or on first degree assault.

At 8:45 p.m. on April 29, 1988, the jury was again called back to the courtroom. At that time, the foreman reported that the jury was divided 9 to 3, and he did not believe there was a reasonable possibility of the jury's reaching a unanimous verdict on any of the "verdicts" that had been submitted to the jury. The trial court then declared a mistrial and discharged the jury.

At the conclusion of the hearing on June 8, 1988, the trial court found that the jury had reached a unanimous verdict of not guilty on the charge of attempted first degree murder but that there had been no jeopardy as to attempted murder in the second degree.

The State filed an amended information amending the first count to charge attempted murder in the second degree. The defendant filed a plea in bar to the amended information, which was sustained as to the first count on July 7, 1988, and the charge of attempted murder in the second degree was dismissed.

The second trial, with a jury waived, commenced on July 27, 1988, and resulted in a finding on September 21, 1988, of guilty of first degree assault. On October 13, 1988, the defendant was

sentenced to imprisonment for 6 to 20 years with credit for 13 months. The defendant has appealed, and the State has attempted to cross-appeal from the dismissal of the attempted murder charges.

The right of the State to appeal from a final order in a criminal case is limited by the provisions of Neb. Rev. Stat. § 29-2315.01 (Reissue 1988), which requires that an application for leave to docket an appeal be presented to the trial court within 20 days after the final order has been entered, and to this court within 30 days from the date of the final order. See, *State v. Taylor*, 179 Neb. 42, 136 N.W.2d 179 (1965); *State v. Satterfield*, 179 Neb. 451, 138 N.W.2d 656 (1965); *State v. Halphrey*, 14 Neb. 578, 16 N.W. 823 (1883). A failure to comply with these requirements which are jurisdictional prevents any review by the State of a final order of the trial court in a criminal case. *State v. Gillett & Gaston*, 199 Neb. 829, 261 N.W.2d 763 (1978). The State cannot obtain a review of a trial court's final order in a criminal case by asserting a cross-appeal. See *State v. Martinez*, 198 Neb. 347, 252 N.W.2d 630 (1977). Since the State failed to comply with § 29-2315.01 in this case, the cross-appeal is dismissed.

The defendant contends that the trial court erred in (1) overruling his motion to dismiss for failure to bring him to trial within 6 months, (2) failing to sustain his plea in bar to the assault charge, (3) refusing to comply with the jury's request to play back the recording of a part of the evidence, (4) declaring a mistrial when the jury failed to agree, and (5) failing to grant a mistrial on the ground the defendant's waiver of a jury trial had been improvident.

With respect to the first assignment of error, the defendant contends that delay resulting from motions of the defendant relating to the attempted murder count should be disregarded in computing the time within which the defendant was brought to trial.

Neb. Rev. Stat. § 29-1207(4)(a) (Reissue 1985) provides:

The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial; the time

> from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence, motions to quash the indictment or information, demurrers and pleas in abatement and motions for a change of venue; and the time consumed in the trial of other charges against the defendant

shall be excluded in computing the time for trial.

Under the statute, the time spent in resolving pretrial matters as specified in the statute is automatically excluded. *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987). The rule is applicable whether the motions relate to all or only one of the counts. The assignment of error is without merit.

The second assignment of error is based upon a contention that the defendant could not be found guilty of both attempted murder and assault, and, therefore, the acquittal of attempted murder barred the retrial on the assault charge. The contention is based upon a theory that the assault was a lesser-included offense of attempted murder.

In *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982), this court adopted the rule that to be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. Under this rule, first degree assault is not a lesser-included offense of attempted murder, because the two offenses involve different elements.

In *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989), we held that receipt of stolen property is not a lesser-included offense of burglary because proof of the greater offense did not necessarily prove the lesser offense. See, also, *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989).

In *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987), we held that the defendant could not be convicted of both drunk driving and motor vehicle homicide where both offenses arose out of the same transaction and drunk driving was the predicate offense for motor vehicle homicide. The *Hoffman* case is not applicable here because the defendant was not convicted of both assault and attempted murder. Without regard to whether the defendant could have been convicted of both counts as originally charged, the fact is that he has only

been convicted of assault.

Even though a defendant cannot be convicted of both a principal offense and a lesser-included offense at the same time, there is no prohibition against charging both in one information. Where both offenses are charged in the same information, an acquittal of the principal offense does not automatically result in an acquittal of the lesser-included offense. Thus, the dismissal of the attempted murder count would not bar a second trial on the assault count on which the jury failed to agree. The second assignment of error is without merit.

The third assignment of error relates to the trial court's refusal to allow the jury to listen to a tape recording of a part of the evidence. The general rule is that such a practice is not to be encouraged, but it is a matter within the discretion of the trial court.

In *Barton v. Shull*, 70 Neb. 324, 97 N.W. 292 (1903), this court stated:

> The practice of stating portions of the evidence to the jury after they have been deliberating, while sanctioned by section 287 of the code, is fraught with some danger to a fair trial, and ought to be indulged in with caution. But the trial judge is in the best position to know when it is required and how his statutory power may best be exercised in particular cases. He should not be hampered unduly. Probably the wisest course is to leave the matter largely to his discretion, reviewing his action only for abuse thereof.

70 Neb. at 330, 97 N.W. at 294.

In *U.S. v. Castillo*, 844 F.2d 1379, 1390 (9th Cir. 1988), quoting from *United States v. Nolan*, 700 F.2d 479 (9th Cir. 1983), *cert. denied* 462 U.S. 1123, 103 S. Ct. 3095, 77 L. Ed. 2d 1354, the court said: " 'A trial court is given great latitude in deciding whether to reread testimony requested by the jury. In general, rereading is disfavored because of the emphasis it places on specific testimony and the delay it causes in the trial.' "

The principal danger involved in allowing the jury to rehear but a part of the evidence is that it may give undue emphasis to

the part which is reheard. From our examination of the record in this case, we conclude that the trial court did not abuse its discretion, and the assignment of error is without merit.

The fourth assignment of error relates to the declaration of a mistrial when the jury failed to agree. This is also a matter which is within the discretion of the trial court. In *State v. Bostwick*, 222 Neb. 631, 644-45, 385 N.W.2d 906, 915 (1986), we held: "So long as a trial court has not abused its discretion in determining that a jury is deadlocked, a declaration of mistrial resulting from a jury's inability to reach a verdict does not bar reprosecution under the double jeopardy clause of the fifth amendment." In determining whether the trial court has abused its discretion, " '[t]he most critical factor is the jury's own statement that it was unable to reach a verdict.' " *State v. Bostwick, supra* at 646, 385 N.W.2d at 916, quoting from *Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir. 1978).

The evidence in this case is that the jury remained divided, almost from the beginning of its deliberations until it was discharged. The foreman advised the trial court that further deliberations would be to no avail, and no member of the jury appeared to dispute his statement. From our examination of the record, we conclude that the trial court did not abuse its discretion, and the assignment of error is without merit.

The last assignment of error relates to the ruling on the defendant's motion for a mistrial, made on September 21, 1988. The defendant argues that his waiver of a jury trial was improvident because he was misled by a ruling of the trial court concerning the testimony of his expert witness, Dr. Korn.

The decision as to whether to grant a motion for a mistrial is within the discretion of the trial court, and a refusal to grant a mistrial will be upheld on appeal in the absence of a showing of an abuse of discretion. *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989).

In addition to the statements made by the victim on the day the assault occurred, the victim testified positively at the trial concerning the defendant as the person who beat and choked her. The defendant offered the testimony of an expert witness, Dr. Korn, a neuropsychologist, in an attempt to establish that the victim's identification of the defendant as her assailant was

the result of confabulation.

Before the second trial began, the State moved in limine to exclude portions of Dr. Korn's testimony. The trial court sustained the motion, and the defendant waived his right to be tried by a jury. There is no question but that the waiver at that point was voluntary and valid.

After the trial had begun and four witnesses had testified, the trial court reversed its ruling on the motion in limine and announced that the testimony which the State wanted to exclude would be admitted. The defendant then called Dr. Korn, and the trial proceeded. On July 28, 1988, the testimony was completed, and both sides had rested. At the request of counsel the matter was continued until September 8, 1988.

Additional evidence was received on September 8, 1988, and both sides again rested. Arguments were scheduled for September 21, 1988.

Before final arguments commenced on September 21, 1988, the defendant moved for a mistrial upon the ground that his waiver of the jury was improvident and had been based upon the ruling on the State's motion in limine made on July 27, 1988. The trial court overruled the motion, and the case was then argued.

It is of some significance that the defendant did not move to withdraw his waiver of a jury trial, or move for a mistrial, when the trial court announced on July 27, 1988, that it had decided to reverse its ruling on the motion in limine.

In *State v. Harper*, 215 Neb. 686, 687-88, 340 N.W.2d 391, 393 (1983), quoting from *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983), we held:

"A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. [Citation omitted.] . . . '[I]t is not the office of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence . . . but is rather to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself.' . . . 'It [the motion in limine] serves the useful

▉

purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial. . . . It is not a ruling on evidence and should not, except on a clear showing, be used to reject evidence. It adds a procedural step to the offer of evidence.' . . ."

It further appears that the waiver of the jury was "negotiated" and was based in part upon the State's agreement to dismiss the charge that the defendant was a habitual criminal and upon the agreement of the State that all testimony and exhibits received at the first trial would be admitted at the second trial and additional witnesses could be called or recalled.

From our examination of the record, we conclude that the ruling of the trial court on the motion for a mistrial was not an abuse of discretion and that under the circumstances of this case there was no miscarriage of justice.

There being no error, the judgment is affirmed.

AFFIRMED.