Shelagh **WHITEAKER,** Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–2594.

Court of Appeals of Alaska.

March 22, 1991.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.*

ANDREWS, District Court Judge.

Shelagh Whiteaker appeals from her conviction of second-degree murder on grounds that her constitutional right to be free from double jeopardy was violated. We reverse her conviction.

Whiteaker was charged with first-degree murder in the shooting death of Jeff Ostergaard on September 10, 1984. She stood trial on that charge in May, 1986. The trial judge declared a mistrial over defense ob-

jection when the jury declared itself unable to reach a verdict. The judge refused to answer questions raised by a juror at the time of discharge and refused to poll the jury on the specific question of their unanimity on first-degree murder.

The case was retried in December, 1987. Whiteaker moved to preclude a second trial on the charge of first-degree murder, claiming no manifest necessity existed to declare the first mistrial, hence the second trial would put her in jeopardy twice for the same offense. The motion was summarily denied. At the conclusion of the second trial, the jury found Whiteaker guilty of murder in the second degree. It is from this verdict that Whiteaker appeals, claiming numerous legal errors. We address only the double jeopardy claim of error as it is dispositive of this case.

### The First Trial

Whiteaker was charged with first-degree murder. Although the record is incomplete on the point, we glean that her defense to the charge, like her defense in the second trial, included alternative claims of self-defense, accident, suicide, or some form of non-intentional killing. In any case, it is undisputed that her claim of self-defense entitled her to jury instructions on all of the lesser offenses included within the first-degree murder charge. The jury was instructed on murder in the second degree, manslaughter, and criminally negligent homicide. In accord with *Dresnek v. State,* 697 P.2d 1059 (Alaska App.1985), *aff'd* 718 P.2d 156 (Alaska 1986), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 679, 93 L.Ed.2d 729 (1986), the judge instructed the jury that it was required to return a verdict on the greatest charge before it returned a verdict on any lesser charge. This instruction also advised the jury that they could deliberate on the charges in any order.[1] The *Dresnek* instruction, *i.e.,* no verdicts on lesser

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The jury was instructed:
   The jury is free to deliberate on the charged offense of Murder in the First Degree and the lesser included offenses of Murder in the Sec-

   ond Degree, Manslaughter, and Criminally Negligent Homicide in any order it wishes. The jury is precluded from returning a verdict on a lesser offense without first returning a verdict on the greater offenses.

charges without first a verdict on the greater charge, was repeated in shortened form as part of the transitional instructions between each of the various degrees of homicide.[2]

After several partial days of deliberation, the jury informed the court that they were hopelessly deadlocked. The judge polled the jury, asking in varied form the general question of whether there was any chance of a verdict. The individual answers amounted to a negative response. After the polling, defense counsel requested to approach the bench. At the bench, the following conference ensued:

> *Defense Counsel:* I want to ask you to poll the jury to see if there are any charges within the packet ... among the ones that have been submitted to them on which they can reach a verdict.
>
> *Judge:* You see, I instructed them ... they have to find a unanimous verdict as to the greater offense before they can find a verdict on the lesser offense.
>
> *Prosecutor:* And that's right because of that *Dresnek* case.... It doesn't appear to be an issue that is open. The request does not appear to be one that is related to the present state of the law. He is not entitled to a verdict on a lesser charge until there is a verdict on the greater charge, either one way or the other. And hung jury means, that's it. We're entitled to retrial. Whether they would find a verdict on a lesser charge is irrelevant, because we have the right to re-try on Murder in the First Degree assuming they are hung up on this and we are going to re-try it.
>
> *Defense Counsel:* That's not the point though. They could have found a verdict on first degree. They could find an acquittal on first degree. Maybe their

problem is they got past first degree and now they can't decide about second, you know, about some lesser....

[Simultaneous discussion].

> *Defense Counsel:* So, we are entitled to a verdict on the first-degree case either way without respect to the lesser included, if they could reach that verdict, at least our time would not have been completely wasted here. And it's very possible that they can reach a verdict just on that case. So it is very obviously related to the state of the law now.
>
> *Prosecutor:* No ... it isn't. [Defense counsel's argument] ... doesn't reflect the state of the law. He has no reason to assume that the jury is considering any other charge except murder in the ... that the jury is not following the jury instructions as you gave them to them which—I'm familiar with the general packet of instructions—is clear on how the jury is supposed to approach the case and the lesser-included.... [Defense counsel] has no rational reason for thinking that they're messed up on the idea of first-degree versus the lesser degrees.
>
> *Defense Counsel:* Obviously you could just poll the jury as to any verdicts in the packet to which they think it would be possible to agree.
>
> *Prosecutor:* That's not material because, I'm entitled to a verdict on the first-degree charge.
>
> *Judge:* I think, under the law ...
>
> *Defense Counsel:* I agree, that's all I ask.
>
> *Judge:* I'm not going to poll them on that issue. No, I don't think that's what I should do.
>
> *Defense Counsel:* Well, okay, I guess if not, so we can argue the discharge.
>
> *Judge:* I'm going to discharge.

---

**2.** Jury Instruction No. 22, the transitional instruction between second-degree murder and manslaughter, read:

> The jury is also free to deliberate on the lesser offense of Manslaughter. The jury is precluded from returning a verdict on the lesser offense of Manslaughter without first returning a verdict on the greater offenses of Murder in the First Degree and Murder in the Second Degree.

Jury Instruction No. 25, the transitional instruction between manslaughter and criminally negligent homicide, read:

> The jury is also free to deliberate on the lesser included offense of Criminally Negligent Homicide. The jury is precluded from returning a verdict on the lesser included offense of Criminally Negligent Homicide without first returning a verdict on the greater offenses of Murder in the First Degree, Murder in the Second Degree, and Manslaughter.

*Defense Counsel:* Okay, we object.

*Judge:* Alright. Counsel, I am persuaded this jury has made every effort to resolve the issue. I am persuaded they are not going to reach a verdict. I don't think I've got sufficient basis to send this jury out and tell them to work until nine o'clock or you've got to work til ten o'clock. I just think that would be nonproductive. I am as disappointed as counsel that this jury was unable to reach a verdict. But sometimes you get cases that twelve people can't agree on. This apparently is that case. Alright ladies and gentlemen, I know that you've worked hard and I appreciate your diligence. I'm disappointed you didn't reach a verdict, but these things happen and I'm ever mindful of the fact that in my instruction I made it clear that the verdict had to be the individual judgment call of each juror. All twelve of you pretty much said it would be impossible for the twelve jurors to reach a unanimous verdict. Okay. I'm going to discharge the jury....[3]

Immediately thereafter, a member of the jury asked: "When you gave us instructions to come ... up with a verdict, we are faced with the charge of first-degree and we considered many degrees. Is it possible to be hung on one charge and not hung on another?" The court replied: "I have discharged the jury." Defense counsel asked to approach the bench. The court replied: "This jury doesn't exist anymore." Counsel inquired: "Could you undo that for a second, so we can talk to you?" The court replied: "I don't think I can undo it. I've said I've discharged them, and I don't have a trial jury." The judge refused to answer the question. Thereafter, the trial was concluded.[4]

This appeal arises from Whiteaker's claim that she was only subject to retrial for negligent homicide, the least serious of the included offenses. Her argument that the second trial should have encompassed only negligent homicide is premised on the conclusion that she had the right to a partial verdict and the judge abused his discretion in refusing to poll the jury, upon request, on the question of whether the jury was unanimous on the most serious charge. Whiteaker challenges the trial court's conclusion that it was manifestly necessary to declare a mistrial when there was a possibility that a jury could have returned a unanimous verdict on one or more of the most serious degrees of homicide. If Whiteaker had no right to a partial verdict then her claim must fail. Thus, we begin our analysis of this issue.

### Right to a Partial Verdict

The analysis must begin with a definition of the term, "partial verdict", as the term is susceptible to several interpretations.

In a case involving several defendants, a partial verdict may mean that the jury is able to return a final verdict against one or more of the accused but not as against all of them. Such partial verdicts are clearly permitted under Alaska Criminal Rule 31(b). The Federal courts follow the same practice. *See* Fed.R.Crim.P. 31(b).

In a case involving a single defendant facing a multiple-count indictment, a partial verdict may mean that the jury is able to return a final verdict as to one or more of the counts but not as to all the counts. Such a partial verdict has been approved implicitly by the supreme court decision in *Koehler v. State*, 519 P.2d 442, at 449 (Alaska 1974) (no manifest necessity to declare a mistrial where the court failed to poll the jury on the possibility of reaching a

---

**3.** The text of the argument cited above differs from the transcript at pp. 1020–1024 and the unofficial transcript cited in defense pleadings on pp. 75–76 of the record. The above cited text is derived from listening to the original tape of the proceedings.

**4.** The attorneys were allowed to discuss the case with jurors after the discharge. The admissibility of affidavits obtained as a result of these

discussions was raised when Whiteaker sought to prevent a second trial on first-degree murder. Whiteaker concedes that A.R.E. 606(b), as well as persuasive case law, precludes consideration of the affidavits. *United States v. MacQueen*, 596 F.2d 76, 83 (2d Cir.1979); *State v. Castrillo*, 566 P.2d 1146, 1148 (1977), *overruled on other grounds, by State v. Wardlow*, 95 N.M. 585, 624 P.2d 527 (1981).

final verdict on at least one of the two counts). Federal decisions are in accord. *See, e.g., Wallace v. Havener,* 552 F.2d 721, 724 (6th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 433, 54 L.Ed.2d 300 (1977).

■ In a case involving a single-count indictment, which includes, by definition, lesser offenses, a partial verdict may mean a final verdict on some, but not all of the greater degrees of the offense included within the charge. Additionally, although we describe as separate scenarios a case in which a defendant faces several separate counts and a case in which the defendant faces a single charge which encompasses several lesser-included offenses, we do so only to simplify and clarify the definitional problems. In resolving Whiteaker's claim to a partial verdict on its merits, we find no rational distinction can be made between these two scenarios. We are persuaded by Whiteaker's argument that whether the prosecutor charges the accused in multiple count indictment or single-count indictment for an offense involving lesser-included offenses, the defendant's double jeopardy rights are the same. *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957), and *Stone v. Superior Court,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1982), support the proposition that resolution of this constitutional issue should not turn on the wording of the indictment.[5]

In this case, the issue arises in the following context—a single defendant charged with a single count of murder in the first degree in violation of AS 11.41.-100. The lesser-included offenses of first-degree murder are murder in the second degree, AS 11.41.110, manslaughter, AS 11.41.120, and criminally negligent homicide, AS 11.41.130.

■ We frame the issue as follows: is an accused entitled to a verdict on the greater charge where the jury has unanimously decided that charge but is deadlocked on the lesser-included offenses? We conclude that the accused is entitled to such a verdict.[6] This holding is not a new rule of law although it may be the first time that this proposition has been expressly stated in Alaska.[7] In *Staael v. State,* 697 P.2d 1050, 1055 n. 2 (Alaska App.1985), *aff'd,* 718 P.2d 948 (Alaska 1986), we concluded that manifest necessity was found where a jury could not agree on the greatest charge of attempted first-degree murder and that the defendant was not entitled to a verdict on any lesser-included offense under those facts. Our decision in *Dresnek,* 697 P.2d at 1064, allows jurors to deliberate on greater and lesser offenses in any order but prohibits return of verdicts on lesser offenses without first returning a verdict on the greater offense. The logical proposition that flows from this case is that if a jury is capable of reaching a unanimous verdict on the greatest offense, it must do so, regardless of its position on lesser-included offenses. Thus, when the jury is unanimous as to the disposition of the greatest charge, manifest necessity for a mistrial on that charge will not arise from its inability to agree as to lesser-included charges. Twelve other jurisdictions

---

**5.** Obviously, there are more complex combinations of these three simplified scenarios. One could easily describe the case involving several codefendants, each of whom has several charges pending against him or her and several of those charges contain lesser-included offenses. In describing such a case, which is not uncommon, the looseness of the term "partial verdict" becomes apparent. Therefore, we attempt to closely define what we decide here with regard to the question of partial verdicts.

**6.** Whiteaker does not argue that she is entitled to a verdict on lesser-included offenses where the jury is deadlocked on the greatest offense. We concur with other jurisdictions which hold that such partial verdicts are often compromise verdicts and should not be considered final verdicts. *Dresnek,* 697 P.2d at 1062; *Staael v. State,* 697 P.2d 1050, 1056 (Alaska App.1985). Jurisdictions which allow such verdicts often have legislation or court rule which authorizes them. *See, e.g., Castrillo,* 566 P.2d 1146, *overruled on other grounds, Wardlow,* 624 P.2d 527; *Oliver v. Justices,* 36 N.Y.2d 53, 364 N.Y.S.2d 874, 324 N.E.2d 348, *aff'd* 324 N.E.2d 348 (N.Y. 1974). Alaska has no such law or court rule and our decision in *Dresnek,* 697 P.2d at 1062 n. 6, precludes such an approach.

**7.** The dissent seems to suggest that this court is adopting a new rule of law which it is applying retroactively. We only explicitly state the implicit holding of *Dresnek* as noted *infra.*

have considered the validity of double jeopardy claims based on partial verdicts involving greater and lesser offenses. Eight jurisdictions reject the notion of partial verdicts and four jurisdictions are in accord with our decision here today.[8]

The state, relying on conclusions reached by the greater number of jurisdictions urges us to reject the use of partial verdicts. The clearest and most comprehensive of these decisions, *A Juvenile v. Commonwealth*, 392 Mass. 52, 465 N.E.2d 240, 243–44 (1984), and *People v. Hickey*, 103 Mich.App. 350, 303 N.W.2d 19, 21 (1981), conclude that a partial verdict situation involving greater and lesser offenses is not a final verdict.[9] In reaching this conclusion, both cases quote a passage from *People v. Griffin*, 66 Cal.2d 459, 58 Cal.Rptr. 107, 426 P.2d 507 (1967), which emphasized the tentative nature of deliberations. *A Juvenile*, 465 N.E.2d at 244; *Hickey*, 303 N.W.2d at 21. The *Griffin* court stated that deliberations might result in a temporary compromise as part of an effort to reach unanimity. *Griffin*, 426 P.2d at 510. Both courts assume that anything short of a total acquittal or a guilty verdict is a tentative agreement subject to change.

In the present case, the state's argument mirrors this position, for the state emphasizes that the jury may consider the various degrees of an offense in any order. According to the state, discussion on one point may prompt a juror to change his or her mind about an element of one of the various included offenses. The state also shares the concerns expressed in *A Juvenile* and *Hickey* that "polling the jury would ... constitute an unwarranted and unwise intrusion into the province of the jury." *A Juvenile*, 465 N.E.2d at 244 (quoting *Hickey*, 303 N.W.2d at 21).

The state's final policy argument is that allowing partial verdicts could increase the number of mistrials. This appears to be based on the speculative notion that since *Dresnek* allows the jury to deliberate on charges in any order, a jury starting with the lowest offense and working toward the greatest offense may never deliberate on the greatest charge if the jurors are frustrated by their lack of agreement on the lesser charges.

We think that the reasoning of the cases which have adopted the use of partial verdicts adequately confronts and resolves these concerns. California, New Hampshire, New Mexico, and New York have adopted the use of partial verdicts. *Stone*, 646 P.2d 809; *State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319 (1980); *Castrillo*, 566 P.2d 1146, *overruled on other grounds*, *Wardlow*, 624 P.2d 527; *Oliver*, 364 N.Y. S.2d 874 *aff'd*, 324 N.E.2d 348.

In *Pugliese*, the trial judge instructed the jury on manslaughter and the lesser-included offense of criminally negligent homicide. 422 A.2d at 1320. The judge also instructed the jury that it could not consider the lesser offense unless it found the defendant not guilty of manslaughter. *Id*. During the first day of deliberations, the jury asked the judge about manslaughter and then the next day about the lesser offense, negligent homicide. *Id*. The jury finally announced that it was deadlocked, and the judge indicated that he was going to grant a mistrial. *Id*. The defendant asked the judge to poll the jury about an acquittal on the manslaughter charge, but the judge refused. *Id*.

---

8. Whiteaker also cites four cases in which the courts assume the validity of a partial verdict: *State v. Halsey*, 232 Neb. 658, 441 N.W.2d 877 (1989); *State v. Seagroves*, 691 S.W.2d 537 (Tenn.1985); *State v. Russell*, 101 Wash.2d 349, 678 P.2d 332 (1984); *People v. Krogul*, 115 Ill. App.3d 734, 70 Ill.Dec. 807, 450 N.E.2d 20 (1983). In all four cases, a defendant was acquitted of a greater offense while the jury hung on a lesser included. The validity of the acquittal was not at issue in any of the cases. The *Halsey* and *Krogul* decisions indicate that Nebraska and Illinois accept partial verdicts despite the holdings in *State v. Hutter*, 145 Neb. 798, 18 N.W.2d 203 (1945), and *People v. Hall*, 324 N.E.2d 50 (1975).

9. The other six decisions rejecting the use of partial verdicts are *Fitzgerald v. Lile*, 732 F.Supp. 784 (N.D.Ohio 1990); *State v. Bell*, 322 N.W.2d 93 (Iowa 1982); *State v. Booker*, 306 N.C. 302, 293 S.E.2d 78 (1982); *Walters v. State*, 255 Ark. 904, 503 S.W.2d 895 (1974); *State v. Hutter*, 145 Neb. 798, 18 N.W.2d 203 (1945); and *People v. Hall*, 25 Ill.App.3d 992, 324 N.E.2d 50 (1975).

Emphasizing that a defendant has "a valued right to have his trial completed by a particular tribunal", the New Hampshire Supreme Court concluded that there was no manifest necessity for a mistrial. *Id.* at 1321 (quoting *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978)). The trial judge had not explored all possible alternatives to a mistrial; therefore, the "high degree" of necessity required to justify a mistrial did not exist. *Id.* The supreme court stated that the "ends of public justice" would not have been defeated by simply asking the jury if it had reached a verdict on the manslaughter charge. *Id.*

California adopted partial verdicts for greater and lesser offenses in *Stone*, 646 P.2d 809. The defendant in *Stone* was charged with murder, and the judge instructed the jury on six options: first-degree murder, second-degree murder, voluntary manslaughter, involuntary manslaughter, justifiable homicide, and acquittal. *Id.* at 812. After deliberating for seven days, the jury stated in open court that there were no votes for first or second-degree murder, but that it was split on the manslaughter charges. *Id.* The defendant asked for a formal verdict on the murder charges, but the trial court denied the request because it thought that any remedy for the defendant should come from the California Supreme Court. *Id.* The judge stated, however, that he was ruling that none of the jurors believed the evidence was sufficient to support a guilty verdict for murder. *Id.* Before discharging the jury, the judge polled it again, confirming that there were no votes for murder. *Id.* at 813.

In concluding that double jeopardy barred retrial for murder, the California Supreme Court noted that the jury in *Stone* indicated in open court and on the record that it could render a partial verdict. *Id.* at 817. Like the court in *Pugliese*, the California court stated that a defendant has a right to a verdict from a particular jury. *Id.* at 818 n. 7. The court further emphasized that successive trials burden the defendant while allowing the state to benefit from dress rehearsals. *Id.* at 817.

We find the reasoning in these cases to be sound. The state's concern about compromise verdict is met by procedure set in place by *Dresnek*, 697 P.2d 1059, and *Staael*, 697 P.2d 1050. The jury is not allowed to report tentative verdicts on lesser offenses. It must return a verdict on the greatest offense before lesser verdicts will be accepted. The state's concern about the intrusive nature of polling the jury about greater and lesser offenses is the same concern that exists when the court polls the jury about separate counts. We see no intrusion into the province of jury which is either unwarranted or unwise or more extensive than that which already takes place.[10]

---

**10.** While we believe that jury instructions based on *Dresnek* are sufficient to apprise the jury of its obligations, a trial court should not hesitate to amend verdict forms or its polling procedures to reassure itself that a jury has in fact deadlocked on the greatest charge. For example, where confusion is evident or upon request of counsel, as suggested in *Fitzgerald*, 732 F.Supp. at 789 n. 5,

[T]he court could submit additional forms with the admonition to only complete one and where the forms would read alternatively: We find the defendant not guilty of A (stated crime) but we are unable to agree on B (lesser[-] included offense); We find the defendant not guilty of A and B, but we are unable to agree on C (more than one lesser included offense); or We are unable to agree on a verdict as to the charged offense or any of the lesser offenses.

The California Supreme Court in *Stone* offers guidance that is closely analogous to that outlined in *Dresnek*.

To guide the trial courts of this state in fulfilling the obligations which this rule entails, we suggest procedures derived by analogy from the multiple count situation....

When a trial judge has instructed a jury on a charged offense and on an uncharged lesser-included offense, one appropriate course of action would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense. The jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense, and that if it finds the defendant guilty of the greater offense, or if it is unable to agree on that offense, it should not return a verdict on the lesser offense.

*Stone*, 646 P.2d at 820 (citations omitted).

Finally the state's concern about an increase in the number of mistrials is both speculative and unreasonable. It is equally arguable the return of partial verdicts will promote the goal of judicial economy and finality of litigation. A criminal defendant who is acquitted of the most serious charge or charges may be more likely to resolve the lesser-pending charge by plea once the most serious consequences are eliminated.

Unlike the facts in *Stone*, this is not a case where the jury clearly announced on the record an acquittal on the greatest charge which the judge refused to accept. This case turns on the question of whether the trial judge abused his discretion in finding manifest necessity to declare a mistrial. The answer to that question is dependent upon whether the judge abused his discretion in refusing to answer a juror's question, which suggested the possibility of reaching a partial verdict, and refusing Whiteaker's specific request to repoll the jury to ascertain if the jury had acquitted her of first-degree murder.

■ The record, in summary, reveals that the jury was properly instructed under *Dresnek* that a verdict had to be returned on murder in the first degree before the jury could return a verdict on any lesser offense. The jury reported that it was unable to agree. The trial judge properly polled the jurors individually. The polled confirmed the report of a deadlock. In the absence of a request to determine whether the jury was deadlocked on first degree murder or another charge, the record would support a finding of no probability that a verdict could be reached, hence a manifest need to declare a mistrial. *See, e.g., Koehler*, 519 P.2d at 448. Jurors are presumed to understand and follow the jury instructions and we decline to place a burden on the trial judge to *sua sponte* inquire further or perform a special poll of jurors who deliberate on cases involving lesser included offenses. *See, e.g., Fitzgerald*, 732 F.Supp. at 789. On the other hand, upon the request of counsel or upon evidence of confusion among the jurors, a different rule must apply.

■ In this case, as detailed *infra*, several events occurred after the jury poll. Whiteaker specifically requested that the jury be polled to ascertain that they were deadlocked on the greatest charge. The judge declined the request. He began to discharge the jury. During the course of his discharge comments, a juror interjected a question.

> When you gave us the instructions to come up with a verdict, we are faced with the charge of first-degree and we considered many degrees. Is it possible to be hung on one charge and not hung on another?

The judge, apparently failing to recognize the legal options available to him,[11] refused to answer the question or pursue other measures to clarify the expressed confusion of the jury despite Whiteaker's request that he do so.[12]

---

We note with interest that the California Supreme Court faced the partial verdict/juror instruction problem in reverse order. The California court addressed first the right to a partial verdict in *Stone*. In *People v. Kurtzman*, 46 Cal.3d 322, 250 Cal.Rptr. 244, 250 n. 8, 758 P.2d 572, 577 n. 8 (1988), which the court termed the "inevitable successor to *Stone*," the California Supreme Court, reviewing California Jury Instructions (Criminal) No. 875 as the implementation of *Stone*, cited with approval our decision in *Dresnek* as the proper method for guiding jury deliberation in lesser-included cases and assuring final verdicts on the greatest charges. The *Kurtzman* analysis reinforces our conclusion that *Dresnek* provides sufficient guidance to jurors to allow them to reach a partial verdict.

11. A judge may abuse his or her discretion by failing to recognize the option legally available to him. *Cano v. Anchorage*, 627 P.2d 660, 663 (Alaska App.1981).

12. We recognize that the judge was interrupted in his discharge speech immediately after he had discharged the jury. We note, however, that the jurors had not left their seats, talked to one another or to counsel, or heard anything during the course of these post-deliberation proceedings which would in any way have affected their deliberations if they had been asked to retire to the jury room to try to clarify the confusion which existed or to continue deliberations if a verdict appeared possible after their question was answered.

Relevant case law is sparse, but a New York decision is exactly on point. In *Dissell v. Adams*, 115 A.D.2d 1006, 497 N.Y.S.2d 570, 576 (1985), the trial judge discharged the jury based

We conclude that the trial judge abused his discretion in refusing to resolve the questions posed by the juror which evidenced some possibility of reaching a partial verdict or to repoll the jury as requested by Whiteaker. As a consequence, we conclude that the trial judge abused his discretion in concluding that there was no probability that a unanimous verdict could be reached. In *People v. Chaney*, 202 Cal. App.3d 1109, 249 Cal.Rptr. 251, 258–59 (1988), the court noted: "The unmistakable import of *Stone* thus is that evidence of an actual implied acquittal is unnecessary to take a declaration of mistrial outside the concept of legal necessity; it is enough if the trial court fails to afford the deadlocked jury with an *opportunity* to render a partial verdict of acquittal."

■ While we must give great deference to a trial judge's decision to grant a mistrial when it appears there is no probability of a unanimous verdict, appellate courts cannot approve a trial judge's decision to discharge a jury if the record does not support a finding of manifest necessity. This is so because of the "importance to the defendant of being able, once and for all, to conclude his confrontation with society through the conduct of the tribunal he might believe to be favorably disposed to his fate." *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717 (1978).

We conclude on this record that Whiteaker's constitutional right to be free from double jeopardy was violated. U.S. Const. amend. V; Alaska Const. art. I, § 9. She was placed in jeopardy twice for the same offense because there was no manifest necessity to justify a mistrial on her first trial, and she faced the same charge of first-degree murder again in her second trial.

### Remedy

■ We are left with a record that suggests that the jury may have been unanimous on one or more charges, but deadlocked on at least one charge. Whiteaker argues that this court must remand the case for a new trial limited to a negligent homicide charge. Whiteaker relies on *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), to support her argument.[13]

We examine the caselaw cited by Whiteaker. *Price* stands for the proposition that when a defendant is improperly tried for a jeopardy-barred offense, the error is not cured if the jury convicts the defendant of only a lesser-included offense. *Price* fits Whiteaker's fact pattern. In *Price*, the defendant was charged initially with murder and convicted after trial of manslaugh-

on a note and comments by the foreman indicating a hopeless deadlock. Right after being discharged, before the jurors left their seats, three jurors spoke up and disagreed with the foreman's assessment that a partial verdict was unlikely. In light of these post-discharge comments, the appellate court held that the trial judge abused his discretion in discharging the jurors with respect to the charged offense, because the record did not show that there was no possibility of a verdict on that charge. The court ordered a retrial on the least included charge only. *Id.* 497 N.Y.S.2d at 571–72. The ABA Standards provide that requests for polling a jury should be granted even after a verdict has been officially accepted, so long as the jury has not yet dispersed. III *Standards For Trial by Jury*, § 15–4.5 at 147–48, (1986 Supp.). Allowing a poll would be meaningless if the judge could not consider the information learned therefrom. Likewise, a federal decision found an attorney remiss for not requesting a poll even after the jury had dispersed, when, through no fault of his, the attorney was not present when the verdict was returned. *United States v. Beldin*, 737 F.2d 450, 455 (5th Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984). The ABA Standards and *Beldin* clearly envision that comments from jurors after they haven't been officially discharged may be considered in deciding whether to accept a verdict or to order further deliberations or to grant a mistrial. No different result should be required when no verdict has been reported but where the issue is virtually the same: whether to order further deliberations or to grant a mistrial.

**13.** In contrast, the state argues that the court should remand the case to the trial judge so that he could reconvene the original jury and poll them as to which of the charges they voted unanimously and which caused them to deadlock. The state offers no authority to support such a remedy. We reject consideration of the state's proposal. It is without precedential support and hopelessly impractical. The original jury was convened almost five years ago.

ter. The manslaughter conviction was reversed and Price was retried for murder and reconvicted of manslaughter. In his second appeal, the United States Supreme Court held that the retrial for murder violated Price's guarantee against twice being put in jeopardy of conviction of first-degree murder. The Court emphatically rejected the state's claim that the error was harmless in light of Price's conviction for the non-jeopardy-barred offense only:

> The Double Jeopardy Clause ... is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequences of the verdict. To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly. Further, and perhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence.

*Id.* at 331, 90 S.Ct. at 1762 (footnote omitted). The Supreme Court thus vacated Price's manslaughter conviction and ordered a retrial on the manslaughter charge only.

Applying *Price* to Whiteaker's case, if there was no manifest necessity to declare a mistrial on her first-degree murder trial, the error is not cured by simply noting that she was convicted of second-degree murder at the second trial. Applying the *Price* analysis, we must determine which are jeopardy barred offenses for purposes of the retrial in which the defendant was convicted of second-degree murder in the second trial, where the record is unclear as which counts the jury deadlocked on in the first trial.

Under *Price*, Whiteaker cannot face more than a second-degree murder charge. However, the state of the record leaves us in doubt as to what charges may be jeopardy-barred. This confusion results from the fact that the trial judge declared a mistrial when the record was not clear whether the jury was hopelessly deadlocked on any particular charge. We can only say with certainty that the jury had to be deadlocked on murder in the first degree or one of the included charges. Because we have no way of knowing which charge the jury was deadlocked on, we must presume that it was the least serious charge, negligent homicide. We reach this conclusion noting that doubts about whether an offense is jeopardy-barred must be resolved "in favor of the liberty of the citizen". *Downum v. United States*, 372 U.S. 734, 738, 83 S.Ct. 1033, 1036, 10 L.Ed.2d 100 (1963). As a consequence we find that Whiteaker cannot face trial on an offense more serious than negligent homicide.

*Morris v. Matthews*, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), holds that the court can enter a conviction for the highest non-barred offense unless the defendant demonstrates a reasonable probability that she would not have been convicted of that offense if she had been tried on it without inclusion of the jeopardy-barred greater charge. On appeal Whiteaker has not attempted to make a showing that under *Morris*, if she had not faced a first-degree murder charge, she would have been acquitted of negligent homicide. Whether Whiteaker might be capable of making such a showing of prejudice is a question best left for the trial court on remand. *See, e.g., Nathaniel v. State*, 668 P.2d 851, 857 n. 4 (Alaska App.1983); *Nix v. State*, 624 P.2d 823, 825 (Alaska App.1981).

Therefore, we REVERSE the conviction for second degree murder and REMAND to the trial court. The trial court has authority, if the defendant fails to demonstrate prejudice, to enter a judgement of conviction for negligent homicide and to resentence on that offense.

COATS, J., dissents.

COATS, Judge, dissenting.

The great majority of courts which have addressed the issue of whether a trial court must accept a partial verdict on a greater offense when the jury is unable to unanimously agree on a verdict on a lesser-included offense have concluded that the court has no such duty. In fact, it appears that most courts clearly reject the proposition that the trial court has the authority to

receive such a verdict. *See Fitzgerald v. Lile,* 732 F.Supp. 784 (N.D.Ohio 1990); *A Juvenile v. Commonwealth,* 392 Mass. 52, 465 N.E.2d 240 (1984); *State v. Bell,* 322 N.W.2d 93 (Iowa 1982); *State v. Booker,* 306 N.C. 302, 293 S.E.2d 78 (1982); *People v. Hickey,* 103 Mich.App. 350, 303 N.W.2d 19 (1981); *People v. Hall,* 25 Ill.App.3d 992, 324 N.E.2d 50 (1975); *Walters v. State,* 255 Ark. 904, 503 S.W.2d 895 (1974); *State v. Hutter,* 145 Neb. 798, 18 N.W.2d 203 (1945). So, at the time Judge Buckalew was confronted with the decision of whether to ask the jury if it had acquitted Whiteaker of first-degree murder, the great weight of precedent was against his having the authority to receive such a verdict. When the case came up for retrial, Whiteaker's counsel argued that the trial court had no authority to retry Whiteaker on first-degree murder, because the trial judge had not determined that there was manifest necessity for a mistrial on that charge. Whiteaker's counsel, who had considerable time to consider the motion, never thought to raise the issue that Whiteaker could not be retried for second-degree murder or manslaughter. Following a second jury trial, a jury convicted Whiteaker of second-degree murder. On appeal, Whiteaker now argues that we should adopt the minority position that Judge Buckalew was required in her first trial to accept a partial verdict on any offenses upon which the jury could agree as long as the jury followed the instruction which required them to unanimously agree to acquit on a greater offense before moving on to a lesser offense. Since we are unable to know the state of jury deliberations in the first trial, Whiteaker points out that we only know for certain that the jury was unable to agree on the negligent homicide charge. She contends that the maximum charge which she can face is a negligent homicide charge.

In my view, Whiteaker has a strong argument that if the jury in her first trial concluded that she should be acquitted of first-degree murder, but was unable to agree on second-degree murder, that the judge should have accepted the not guilty verdict on first-degree murder. On retrial, she should only face a maximum charge of murder in the second degree. But at the time of Whiteaker's trial, only a small number of jurisdictions had such a procedure. Judge Buckalew had no way of knowing that this court would adopt a minority position. The result of Judge Buckalew's "error" is an extreme windfall for Whiteaker. Having been convicted of second-degree murder, she can only be convicted of negligent homicide. Although I favor a change in the criminal rules to effectuate the rule for which Whiteaker argues, I do not believe that it is fair to apply this rule retroactively.