Ben M. HALSEY, Petitioner,

v.

Harold W. CLARKE, Respondent.

No. CV89–L–506.

United States District Court,
D. Nebraska.

Jan. 14, 1993.

Ben M. Halsey, pro se.

Douglas W. Hand, Lincoln, NE (Court–Appointed), for petitioner.

Robert M. Spire, Atty. Gen., Sharon M. Lindgren, Lincoln, NE, for respondent.

## MEMORANDUM OF DECISION

URBOM, Senior District Judge.

By the report and recommendation dated December 9, 1992, United States Magistrate Judge David L. Piester recommended that the petition be denied. The petitioner objects to the finding of the magistrate judge on the petitioner's first claim asserting a violation of his right to be free from double jeopardy and to the magistrate judge's conclusion that the petitioner failed to exhaust his state court remedies with respect to his claim regarding his waiver of a jury trial.

■ As to petitioner's first claim, which has to do with double jeopardy, I think the magistrate judge has properly analyzed the matter. Contrary to the petitioner's view, *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1989), does not provide relief to him. The holding in that case was that:

> "[T]he Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted."

*Id.* at 510, 110 S.Ct. at 2087.

■ To prove first degree assault, which was the subject of the petitioner's second trial, the state did not prove conduct which would constitute attempted first degree murder, which was the only offense for which he was tried at the first trial to a conclusion. As to all other charges, a mistrial was declared and the mistrial does not constitute the triggering of the double jeopardy clause.

■ As to the waiver of a jury trial, I agree with the petitioner that the magistrate judge was mistaken when he concluded in his December 9, 1992, report and recommendation that the issue had not been exhausted by presentation to the Supreme Court of Nebraska.

The magistrate judge in an earlier memorandum, filing 10, dated August 17, 1990, ruled that the petitioner had exhausted that issue before the Supreme Court of Nebraska, saying:

> "It is true, as argued by the respondent, that the authority cited by the petitioner in his appellate brief to the Nebraska Supreme Court regarding the waiver of jury trial, is not federal authority. However, one of the cases relied upon, *State v. Bishop,* 224 Neb. 522[, 399 N.W.2d 271] (1987)[1], clearly rests upon federal constitutional authority in discussing the right to jury trial and the requirements of a waiver of that right. For this reason, I find that the petitioner adequately presented his constitutional claim to the Nebraska Su-

preme Court regarding his sixth claim, the waiver of jury trial for the second trial."

That conclusion was correct. Not only did the petitioner's brief on appeal to the Supreme Court of Nebraska cite *State v. Bishop,* but it cited *State v. Zemunski,* 230 Neb. 613, 433 N.W.2d 170 (1988), *State v. Kaba,* 217 Neb. 81, 349 N.W.2d 627 (1984), and *Sutton v. State,* 163 Neb. 524, 80 N.W.2d 475 (1957). *State v. Bishop* dealt directly with the Fourteenth Amendment of the Constitution of the United States regarding trial by jury. *State v. Bishop* is cited in *State v. Zemunski,* 230 Neb. at page 618. *State v. Kaba* and *Sutton v. State* do not appear to rely upon federal constitutional law, but deal with the question of a trial judge's discretion in permitting withdrawal of a valid waiver of a jury trial.

The Supreme Court of Nebraska had before it, not only two cases rooted in federal constitutional law, but the argument in the appellant's brief. In that brief's "Conclusion" the appellant's position was summed up this way:

> "Ben Halsey was entitled by *constitutional* standards to a decision, win or lose, from the jury empaneled on April 25, 1988, and that right has been taken from him by the trial court." (Emphasis added).

Filing 5 at page 31. The Supreme Court of Nebraska did not find it necessary to deal with the issue in constitutional terms, because it noted that there never was a motion to withdraw the waiver of a jury trial, but, rather, the defendant moved for a mistrial upon the ground that his waiver of a jury was improvident and had been based upon a ruling on the State's motion in limine that had been made almost two months earlier. Nevertheless, the Supreme Court of Nebraska had before it the constitutional issue and had fair opportunity to resolve it, if it had thought it needed to do so. That is enough for exhaustion purposes.

■ With respect to the merits of the claim regarding waiver of the jury trial the argument of the petitioner is that he did not make a waiver knowingly and intelligently, because he did not know at the time of the

1. The citation is in error—it should be 224 Neb. 522, 399 N.W.2d 271 (1987).

waiver that the trial judge would reverse himself on a motion in limine, a ruling which had favored the defense at the first trial. I feel confident that the granting of a motion in limine and the judge's later reversing that decision does not mean that reliance upon the original ruling amounts to a waiver that is not knowingly and intelligently done. All decisions to waive a jury trial are based upon some uncertainties of what the evidence will be at a future trial. A defendant simply cannot insist that unless he knows what evidence will be received there can be no voluntary waiver.

Accordingly, I agree with the magistrate judge that the petition for writ of habeas corpus must be denied.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is the petition for writ of habeas corpus filed by Ben M. Halsey. For reasons discussed more fully below, I shall recommend the petition be denied.

### BACKGROUND

Petitioner was arrested in connection with the beating of Ramona Vyhlidal and subsequently charged with attempted first degree murder and first degree assault. A jury trial on the charges commenced April 25, 1988, and the case was submitted to the jury at 2:30 p.m. on April 28, 1988. Five verdict forms were given to the jury, permitting them to find the defendant: (1) guilty of first degree assault, (2) not guilty of first degree assault, (3) guilty of attempted first degree murder, (4) guilty of attempted second degree murder, or (5) not guilty of attempted first or second degree murder.[1] Shortly after submission of the case, the jury requested that they be allowed to listen to tape-recorded testimony of certain witnesses.

The prosecution objected to the request, and the trial court advised that the tape-recorded testimony would not be played back absent a stipulation of the parties.

At 5:10 p.m. on April 29, 1988, the jury foreman reported that the jurors were divided 10 to 2, that they had been split since the evening before, and that it did not appear further deliberations would result in any change. (Filing 7, Transcript of Proceedings April 28th and 29th at 8:2–9:3). The trial court gave the jury a mild version of an "Allen charge"[2] (Filing 7, Transcript of Proceedings April 28th and 29th at 7:6–9:21), and asked them to reconvene after a dinner break and reread the instructions aloud in "one final effort" to reach a unanimous verdict. *Id.* at 9:9.

After returning from dinner, the jury foreman asked the bailiff to inform the trial court that the jury had reached a unanimous verdict on "one" of the counts. *State v. Halsey,* 232 Neb. 658, 660, 441 N.W.2d 877 (1989). The trial court responded by asking the bailiff to inform the jury that "they needed to complete the other count." *Id.* The bailiff so informed the jury. It appears neither the defense nor the prosecution were present during this particular communication through the bailiff, but became aware of the communication sometime after trial.

At 8:45 the evening of April 29th, the jury was called to the courtroom and the foreman reported in open court that the jurors were divided 9 to 3 and he did not believe there was a reasonable possibility the jurors could reach a unanimous verdict. When asked by the court, no juror disputed the foreman's statement. (Filing 7, Transcript of Proceedings April 29th at 1:20–2:12). The court declared a mistrial due to the jury's inability to agree, and discharged the jury. (Filing 7, Transcript of Proceedings April 29th at 2:11–17).

Before the second trial began, petitioner's counsel filed a motion to dismiss the attempt-

---

1. The jury was not provided a verdict form allowing them to find the defendant not guilty of attempted first degree murder but guilty of attempted second degree murder. *State v. Halsey,* 232 Neb. 658, 659, 441 N.W.2d 877 (1989).

2. The name derives from the case of *Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896), in which the Supreme Court approved supplemental instructions advising deadlocked jurors to consider one another's views.

ed first degree murder charge after having discovered that the jury had actually reached a unanimous verdict with respect to that charge. On June 8, 1988, a hearing was held on the motion. The jury foreman testified that although the jury was unable to reach agreement on the charges of attempted second degree murder or first degree assault, they did reach a unanimous verdict of "not guilty" on the charge of attempted first degree murder. (Filing 7, Transcript of Proceedings June 8th at 57:7–58:5; 65:13–22). Apparently, they did not return the "not guilty" verdict on the attempted first degree murder charge believing that they had to reach a unanimous verdict on all counts before returning a verdict on any single count. (Filing 7, Transcript of Proceedings June 8th at 62:12–20). At the end of the hearing, the judge entered a verdict of "not guilty" on the charge of attempted first degree murder, but reiterated that the jury had reached neither an acquittal nor a verdict of guilt with respect to the lesser-included offense of attempted second degree murder or the offense of first degree assault. (Filing 7, Transcript of Proceedings June 8th at 70:8–18).

In July, 1988, petitioner was retried on the charge of first degree assault.[3] At the retrial, petitioner elected to waive a jury, and the case was tried to the bench.[4] Petitioner was found guilty of first degree assault (Filing 7, Transcript of Proceedings September 21st at 299:20–300:1), and sentenced to incarceration for a term of 6 to 20 years. The conviction was affirmed on appeal. *State v. Halsey*, 232 Neb. 658, 441 N.W.2d 877 (1989).

Petitioner then filed this action seeking federal habeas corpus relief, alleging: (1) his double jeopardy rights were violated when he was retried on charges of first degree assault; (2) his double jeopardy rights were violated when the judge declared a mistrial; (3) his double jeopardy rights were violated when the trial judge refused to grant the jury's request to play back certain recorded testimony; (4) his double jeopardy rights were violated when the judge communicated with the jury during their deliberations; and (5) his waiver of a jury on retrial was constitutionally ineffective.[5]

### DOUBLE JEOPARDY CLAIMS

Petitioner raises a number of claims which he characterizes as violations of his constitutional protection against double jeopardy. The Double Jeopardy Clause[6] provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. As the Supreme Court has explained on numerous occasions, the Double Jeopardy Clause affords a defendant three basic protections:

[I]t protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969) (footnotes omitted). Generally speaking, a second prosecution following an acquittal or a finding of guilt is barred by double jeopardy if the offenses in the first and second prosecutions are the same, *see Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), or if one offense is a lesser included offense of the other, *see Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio*, 432 U.S. at 167, 97 S.Ct. at 2226 or if the government must

---

**3.** The attempted second degree murder charge was dismissed from the amended information on July 7, 1988; the result of a successful plea in bar.

**4.** The record indicates that petitioner expressly conditioned his waiver of a jury upon stipulations with the prosecution that all witnesses called would testify as they did in the first trial, and that exhibits entered into evidence at the first trial would be readmitted at the second trial. In return for the jury waiver, the prosecution agreed to dismiss the allegation that petitioner

was an habitual criminal. (Filing 7, Transcript of July 27 Trial at 134:2–135:22).

**5.** The original petition also contained a speedy trial claim, which petitioner has chosen to dismiss. *See* Filing 13 (petitioner wishes to dismiss the speedy trial claim and proceed on the remaining 5 grounds for relief). *See also* Petitioner's Brief at 2.

**6.** The Double Jeopardy Clause of the Fifth Amendment is made applicable to the states through the Fourteenth Amendment.

prove conduct in the subsequent prosecution that constitutes an offense for which the defendant has already been prosecuted. *See Grady v. Corbin,* 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990); *United States v. Felix,* ―― U.S. ――, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). However, "[u]nlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

Petitioner's first claim asserts that his double jeopardy rights were violated when he was retried on charges of first degree assault. His argument is premised upon the contention that first degree assault is a lesser included offense of attempted first degree murder; thus, he argues, his acquittal on charges of attempted first degree murder barred any "subsequent prosecution" for first degree assault. (Petitioner's Brief at 3). This claim does not entitle petitioner to habeas relief. As discussed below, first degree assault is not a lesser included offense of attempted first degree murder, and, more importantly, retrial after a mistrial due to a hung jury does not violate the Double Jeopardy Clause.

Under Nebraska law, first degree assault is not a lesser included offense of attempted first degree murder. *State v. Halsey,* 232 Neb. at 662 (first degree assault is not a lesser included offense of attempted murder because the two offenses contain different elements and it is possible to commit the greater without at the same time having committed the lesser). Furthermore, although the Nebraska courts " 'have the final authority to interpret ... that State's legislation' " *Brown v. Ohio,* 432 U.S. at 167, 97 S.Ct. at 2226 (quoting *Garner v. Louisiana,* 368 U.S. 157, 169, 82 S.Ct. 248, 254–55, 7 L.Ed.2d 207 (1961)), I note the same conclusion is reached under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[7]

More important to the disposition of this claim than the fact that first degree assault is not a lesser included offense of attempted first degree murder, is the fact that petitioner's first claim for relief is misfocused. It overlooks the fact that he has not been subjected to the sort of "subsequent prosecution" that is prohibited by the Double Jeopardy Clause. Rather, the "subsequent prosecution" about which petitioner complains was nothing more than a retrial on a charge upon which original jeopardy had never terminated.

"[A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." *Richardson v. United States,* 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984). As the Supreme Court explained in *Richardson:*

> The case law dealing with the application of the prohibition against placing a defendant twice in jeopardy following a mistrial because of a hung jury has its own sources in logic. It has been established for 160 years, since the opinion of Justice Story in *United States v. Perez,* 22 U.S. 579, 9 Wheat. 579, 6 L.Ed. 165 (1824), that a failure of the jury to agree on a verdict was an instance of "manifest necessity"

**7.** Under the *Blockburger* test, "[u]nless each statute requires proof of an additional fact which the other does not ... the Double Jeopardy Clause prohibits successive prosecutions...." *Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. at 2226. A lesser included offense will, by definition, require "no proof beyond that which is required for conviction of the greater" offense. *Brown v. Ohio* at 168, 97 S.Ct. at 2226. In this instance, the offense of attempted first degree murder and the offense of first degree assault each require proof of an element the other does not. Although "serious bodily injury" is an element of first degree assault, *see Neb.Rev.Stat.* § 28–308 (Reissue 1989), it is not an element of attempted first degree murder. Likewise, although "deliberate and premeditated malice" and intent to kill are elements of attempted first degree murder, *see Neb.Rev.Stat.* §§ 28–201 and 28–303 (Reissue 1989), they are not elements of first degree assault. Thus, because first degree assault requires proof beyond that required to prove attempted first degree murder, first degree assault is a separate, rather than a lesser included, offense under *Blockburger. Cf. United States v. Cavanaugh,* 948 F.2d 405, 409–410, 415 (8th Cir. 1991) (assault resulting in serious bodily injury is not a lesser included offense of murder; the two are completely separate offenses).

which permitted a trial judge to terminate the first trial and retry the defendant, because "the ends of public justice would otherwise be defeated." *Id.* at 580. Since that time we have had occasion to examine the application of double jeopardy principles to mistrials granted for reasons other than the inability of the jury to agree ... [n]evertheless, we have constantly adhered to the rule that a retrial following a "hung jury" does not violate the Double Jeopardy Clause.

*Richardson* at 323–24, 104 S.Ct. at 3085–86 (holding that when judge declares a mistrial after the jury acquits on one charge but deadlocks on other charges, retrial may be had on deadlocked charges). *See also Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978) (without exception, courts have held a trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to retrial;

this has long been considered the classic basis for a proper mistrial). Thus, petitioner's claim that double jeopardy barred retrial on the first degree assault charge following a mistrial due to a hung jury is without merit.[8]

Petitioner's second claim asserts that the declaration of mistrial was improper. His argument appears premised upon the assertion that the trial judge declared a mistrial prematurely, "unaware of the true progress of the Halsey jury." (Petitioner's Brief at 8). The record does not bear this out.[9]

When a judge *sua sponte* declares a mistrial and discharges the jury before a verdict is rendered, the defendant may be retried without violating double jeopardy so long as the declaration of mistrial resulted from "manifest necessity." *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *United States v. Perez,* 22 U.S. 579, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824).[10] As explained by the Su-

---

**8.** Petitioner also attempts to rely upon the Supreme Court's decision in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) (double jeopardy bars subsequent prosecution where, to establish an essential element of an offense, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted), to support his double jeopardy argument. Essentially, he argues that because the state relied upon the evidence of the assault to prove attempted first degree murder in the first trial, and because proof of the same assault was relied upon during retrial on the first degree assault charge, the double jeopardy clause was violated. His reliance upon *Grady* is misplaced.

Unlike *Grady,* this is not a situation where the government sought, in a subsequent prosecution under a new indictment, to prosecute the defendant on conduct for which he had already been convicted or acquitted, and jeopardy thereby terminated. Rather, this is a case where the first degree assault charge was set forth separately in the original information, and because the jury was unable to reach a verdict on the first degree assault charge, petitioner was retried on that charge, jeopardy never having terminated. When a defendant is retried following a mistrial due to a hung jury, the Double Jeopardy Clause does not prevent the prosecution from relying upon evidence of the assault presented in the first trial to prove the same assault on retrial. *Cf. United States v. Cavanaugh,* 948 F.2d 405, 414, 415 (the rule set forth in *Grady* is inapplicable where, after jury was dismissed without passing on charge of assault separately set forth in first indictment, the state attempts to retry defendants on the assault charge). I decline petition-

er's invitation to extend the holding of *Grady* beyond the procedural setting in which it arose.

**9.** To support his argument that declaration of mistrial was somehow "improper," petitioner relies heavily upon the jury confusion that led to his eventual acquittal on the charge of attempted first degree murder. Any confusion surrounding the attempted first degree murder charge is largely irrelevant to this action, and, nonetheless was remedied when a verdict of acquittal was properly entered on that charge. Regardless of whether the jury initially failed to clearly communicate to the trial court that it had reached a unanimous verdict of "not guilty" with respect to the attempted first degree murder charge, the record is quite clear there was *no verdict reached* as to the charges of attempted second degree murder or first degree assault. It is only the propriety of the declaration of mistrial with respect to charges of first degree assault that concerns this court, as the retrial about which petitioner complains was had only on the charge of first degree assault. Thus, it is only the declaration of mistrial with respect to the charge of first degree assault upon which I focus.

**10.** The term "manifest necessity" first appeared in *United States v. Perez,* 22 U.S. 579, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824), where Justice Story wrote:

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion taking all the circumstances into consideration, there is a manifest necessity for the [mistrial], or the

preme Court, there are some circumstances under which judicial scrutiny of the decision to grant a mistrial is very exacting,[11] and, at the other extreme, there are circumstances under which a judge's decision to declare a mistrial is accorded great deference. *Arizona v. Washington*, 434 U.S. at 508–509, 98 S.Ct. at 831–32. When a mistrial is granted based upon the judge's belief that the jury is deadlocked, that decision is entitled to "great deference by a reviewing court." *Id.* at 510, 98 S.Ct. at 832–33. Indeed, the Supreme Court instructs that:

> It has been established for 160 years ... that a failure of the jury to agree on a verdict was an instance of "manifest necessity" which permitted a trial judge to terminate the first trial and retry the defendant. . . .

*Richardson v. United States*, 468 U.S. at 323–24, 104 S.Ct. at 3085. *See also Winston v. Moore*, 452 U.S. 944, 101 S.Ct. 3092, 69 L.Ed.2d 960 (1981) (Rehnquist J., dissenting) (emphasizing the great deference accorded trial judges by noting that he knew of no case where the Supreme Court had overturned a trial court's declaration of mistrial after a jury was unable to return a verdict on the ground that the manifest necessity standard had not been met). The rationale for according trial judges "great deference" in the hung jury situation is that the trial court "is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate." *Ari-*

zona v. Washington, 434 U.S. at 510 n. 28, 98 S.Ct. at 832 n. 28. Thus, in instances where the record reveals the trial judge failed to exercise "sound discretion" when declaring a mistrial, closer appellate scrutiny of the decision is appropriate. *Id.*

In this instance a mistrial was declared because, after two days of deliberation, the jurors informed the court they were unable to reach a verdict as to, *inter alia*, the charge of first degree assault. Although the numerical split had changed slightly, the judge was aware the jury had been deadlocked for more than a day when he declared a mistrial. (Filing 7, Transcript of Proceedings April 28th and 29th at 8:2–9:3). In response to questions from the bench, the jury foreman indicated he did not believe there was any possibility the jury could reach a unanimous verdict on any of the verdict forms submitted to them. The foreman indicated he did not believe further negotiations would be helpful, as the mood of the jury was deteriorating.[12] Under such circumstances the judge's declaration of mistrial was supported by manifest necessity, and did not represent a failure to exercise sound discretion. Because the mistrial was not improper, retrial on the first degree assault charge does not offend the Double Jeopardy Clause. *Richardson* 323–26, 104 S.Ct. at 3084–87; *Nelson v. District Court of the State of Iowa*, 543 F.2d 631 (8th Cir.1976) (declaration of mistrial due to deadlocked jury was not an ·abuse of discretion where jury sent word it was deadlocked and the deadlock was confirmed by jury foreman in open court).

---

ends of public justice would otherwise be defeated.

11. Although such circumstances are neither present nor relevant on the facts of this case, I note that the Supreme Court has held that: "the strictest scrutiny is appropriate where the basis for the mistrial is the unavailability of critical prosecution evidence, or where there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Arizona v. Washington*, 434 U.S. at 508, 98 S.Ct. at 832 (footnote omitted).

12. Before the jury broke for dinner, the foreman informed the judge that he did not believe further deliberations would result in a verdict, because

"each side [was] firmly convinced" they were right. (Filing 7, Transcript of Proceedings April 28th and 29th at 8:22–9:3). After returning from dinner and deliberating until 8:45 p.m., the jury foreman again informed the judge that he did not believe further deliberations would be helpful:

> THE COURT: You don't—Do you think any further negotiations would be helpful?
> MR. FOREMAN: I don't believe so. Each of the members have stuck by their initial convictions and that's the way it has been from the beginning and I don't think that—I mean, I believe that they should be respected. We've retained our humor almost up 'til now and now I can sense that it's beginning to get a little nervous and restrained.

(Filing 7, Transcript of Proceedings April 29th at 1:24–2:6).

Petitioner's next two double jeopardy claims rely upon differing assertions of judicial conduct which petitioner argues contributed to the need for a mistrial, thereby violating his double jeopardy rights. The Double Jeopardy Clause protects defendants against governmental actions intended to provoke a mistrial, and it bars retrial where "'bad faith conduct'" by a judge threatens harassment of an accused "'by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (quoting *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) and *Downum v. United States,* 372 U.S. 734, 736 (1963)).

Petitioner argues that the judge contributed to the jury's deadlock by: (1) refusing to grant the jury's request to play back certain recorded trial testimony during jury deliberations;[13] and (2) responding, through the bailiff, to a message from the jury informing the court that they had reached a unanimous verdict on one count.[14]

I need not address whether the conduct about which petitioner complains amounted to judicial error, because, even if it did, the Double Jeopardy Clause would not bar retrial unless the judicial error was either motivated by bad faith, intended to provoke a mistrial, or intended to prejudice petitioner's prospects for an acquittal. *Dinitz,* 424 U.S. at 611, 96 S.Ct. at 1081–82; *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27

L.Ed.2d 543 (1971); *United States v. Klande,* 602 F.2d 180, 182 (8th Cir.1979) (double jeopardy does not bar retrial after mistrial even if defendant's motion for mistrial was necessitated by prosecutorial or judicial error, unless the error was intended to provoke mistrial or was motivated by bad faith or undertaken to prejudice or harass the defendant). Petitioner does not argue, and nothing in the record indicates, that the conduct of the trial judge was motivated by bad faith, intended to provoke a mistrial or to prejudice petitioner's prospects for an acquittal. *Dinitz,* 424 U.S. at 611, 96 S.Ct. at 1081–82. In the absence of such evidence, these claims do not entitle petitioner to federal habeas relief.

## WAIVER OF JURY TRIAL

Petitioner argues that his waiver of a jury on retrial was constitutionally ineffective.[15] Consideration of this claim is procedurally barred because petitioner failed to fairly present the substance of such federal constitutional claim in the state courts.

A federal court can consider the merits of a particular federal habeas claim only when the petitioner has "fairly presented" to the state courts the "substance" of such claim. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citing *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971)). Fair presentment requires that the highest court of the state rendering the judgment of conviction have had a "'fair opportunity' to apply controlling legal principles to the facts bearing

---

**13.** Although clearly "it is within the trial judge's discretion to replay a tape at the jury's request" *United States v. Koessel,* 706 F.2d 271, 275 (8th Cir.1983), petitioner argues the judge's decision to refuse the jury's request to play back certain recorded trial testimony during jury deliberations somehow deprived him "of the opportunity to have his trial completed" by the first jury. I note this argument is premised upon the assumption that listening to the recorded testimony would have broken the deadlock or somehow facilitated the reaching of a unanimous verdict. There is nothing in the record before me, nor any argument presented by petitioner, that supports this contention.

**14.** I note the trial judge's response to the message from the jury was to ask the jury, through

the bailiff, to continue their deliberations on the count upon which they had not yet reached a verdict. Frankly, I have a difficult time accepting petitioner's contention that such a communication, whether error or not, contributed to the deadlock that necessitated a mistrial. If anything, it would appear that a communication asking the jury to continue deliberations on a deadlocked charge would have the effect of encouraging agreement rather than prejudicing the petitioner's prospects for a verdict.

**15.** I note that although this claim was not presented in the *pro se* habeas petition as a federal constitutional claim, it has been couched as such and argued as such in the brief submitted by petitioner's appointed counsel. *See* filing 2 at 8; Petitioners Brief at 11–13.

upon [the petitioner's] constitutional claim." *Anderson v. Harless*, 459 U.S. at 6, 103 S.Ct. at 277 (quoting *Picard*, 404 U.S. at 276, 92 S.Ct. at 512–13)). "It is not enough that all the facts necessary to support the federal claim were before the state courts ... or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. at 6, 103 S.Ct. at 277. *See also Purnell v. Missouri Dept. of Corrections*, 753 F.2d 703 (8th Cir.1985) (no fair presentment of federal habeas claim where, in state court, petitioner argued on purely evidentiary grounds that the trial court abused its discretion in excluding expert testimony, and where no federal constitutional ground was asserted in arguing that trial court abused its discretion in not declaring a mistrial); *Nelson v. Solem*, 714 F.2d 57 (8th Cir.1983) (substance of federal habeas claim not fairly presented in state courts where petitioner did not rely upon any federal cases or law).

In this instance the petition indicates, and the record confirms, that petitioner did not present the state courts with a federal consti-tutional claim regarding waiver of jury trial; rather, petitioner presented the state courts with a claim that the trial court erred by failing to grant a mistrial at the conclusion of the retrial for the reason that defendant's waiver of a jury was "improvident." *See State v. Halsey*, 232 Neb. 658, 664–66, 441 N.W.2d 877 (1989).[16] *See also* Filing 5, Appellant's Brief at 29–31. In presenting his claim to the Nebraska Supreme Court, petitioner neither cited federal case law nor referred to a federal constitutional provision.[17] In fact, there was no discernable reference in the argument presented in the state court to either federal law or a federal constitutional right. Furthermore, neither the State's brief addressing the claim nor the Nebraska Supreme Court opinion addressing the claim relied upon or cited to federal case law or federal constitutional provisions.[18]

Because the precise constitutional claim presented in this federal petition has not been presented in the state courts, and because petitioner has not alleged facts or argued any circumstances or law sufficient to

16. In essence, petitioner based his request for mistrial on the argument that his original decision to voluntarily waive a jury was rendered "improvident" in light of the trial court's reconsideration during trial of its previous ruling on a motion in limine. The Nebraska Supreme Court described the facts underlying petitioner's request for mistrial as follows:

> The last assignment of error relates to the ruling on the defendant's motion for mistrial, made on September 21, 1988. The defendant argues his waiver of a jury trial was improvident because he was misled by a ruling of the trial court concerning the testimony of his expert witness, Dr. Korn.
> \* \* \* \* \* \*
> [At the first trial] defendant offered the testimony of an expert witness, Dr. Korn, a neuropsychologist, in an attempt to establish that the victim's identification of the defendant as her assailant was the result of confabulation.
> Before the second trial began, the State moved in limine to exclude portions of Dr. Korn's testimony. The trial court sustained the motion, and the defendant waived his right to be tried by a jury. There is no question but that the waiver at that point was voluntary and valid.
> After the trial had begun and four witnesses had testified, the trial court reversed its ruling on the motion in limine and announced that the testimony which the state wanted to exclude would be admitted. The defendant then

called Dr. Korn, and the trial proceeded. On July 28, 1988, the testimony was completed, and both sides had rested. At the request of counsel, the matter was continued until September 21, 1988.

> Before final arguments commenced on September 21, 1988, the defendant moved for mistrial upon the ground that his waiver of the jury was improvident and had been based upon the ruling on the state's motion in limine made on July 27, 1988. The court overruled the motion, and the case was then argued.
> It is of some significance that the defendant did not move to withdraw his waiver of a jury trial, or move for a mistrial, when the court announced on July 27, 1988, that it had decided to reverse its ruling on the motion in limine.

*State v. Halsey*, 232 Neb. at 664–65.

17. I note that while "it may not be necessary for a petitioner to refer to a specific provision of the Constitution, some indication of the nature of his or her constitutional claim must be given either by direct or indirect reference to federal law." *Snethen v. Nix*, 736 F.2d 1241, 1244 (8th Cir. 1984).

18. I note further that in none of the state court cases relied upon in petitioner's state court brief did the Nebraska Supreme Court cite to or rely upon federal case law or the Constitution in reaching its decision.

excuse his resulting procedural default,[19] this claim is procedurally barred and may not be considered by this court.

Petitioner having presented no claim which entitles him to federal habeas relief, I shall recommend this petition be denied.

IT THEREFORE HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B) that this petition be denied.

The petitioner is notified that unless objection is made within ten days after being served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.

Dated December 9, 1992.

---

**19.** If a federal habeas claim has not been fairly presented in the state courts, it is procedurally barred in the federal courts unless the petitioner can show both adequate cause to excuse the failure to raise the claim in state court and actual prejudice resulting from failure to address the merits in federal court. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Buckley v. Lockhart*, 892 F.2d 715, 718 (8th Cir.1989), *cert. denied*, 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990).