Agnes, A.J.
On January 26, 2000, the defendant, Jeffrey Roth, was indicted by the Grand Jurors of Essex County on two indictments charging him with Homicide by Motor Vehicle in violation of G.L.c. 90, §24G(a) (No. 0077CR137), and Reckless or Negligent Operation of a Motor Vehicle While Under the Influence of Intoxicating Liquor and Causing Serious Bodily Injury in violation of G.L.c. 90, §24L(i) (No. 0077CR138). These charges arose out of an incident that occurred on Interstate Route 95 in Topsfield, Massachusetts on September 7, 1999, in which there was a collision between a Dodge Durango vehicle being operated by the defendant and a Ford Bronco vehicle being driven by the decedent, David Decarney in which the surviving victim, John Johanson, was a passenger.
After several days of deliberations, the jury reported they were unable to agree on a verdict. At the request of the defendant and over the objection of the Commonwealth, the court inquired of the jury. When the juiy reported they had reached unanimous verdicts on some of the offenses charged in each indictment, the court received these partial verdicts and declared a mistrial as to the remainder of the charges. The Commonwealth has filed a motion captioned “Motion To Vacate Entry of Partial Verdicts And For Declarations of Mistrials” in which it seeks an order from the court vacating the partial verdicts of not guilty, and an order declaring a mistrial on each of the indictments.
BACKGROUND
I. The original instructions to the jury. The cases came before the court for trial by jury on November 13, 2000. The evidence closed on Wednesday, November 23, 2000. By agreement, arguments and charge were scheduled for Monday, November 27, 2000, to enable the jury and all others to observe the Thanksgiving holiday. Following closing arguments by counsel, the court instructed the jury with regard to the following charges. On Indictment No. 0077CR0137, the motor vehicle homicide charge, the court in *710 structed the jury with regard to the elements of (1) the offense as charged in the indictment [homicide by motor vehicle under G.L.c. 90, §24G(a)], and (2) the lesser included offense of motor vehicle homicide by reason of operating recklessly or negligently so as to endanger but not while under the influence of intoxicating liquor. On Indictment No. 0077CR0138, the serious bodily injury charge, the court instructed the jury with regard to the elements of (1) the offense as charged in the indictment [causing serious bodily injury by reason of operating under the influence of intoxicating liquor and recklessly or negligently so as to endanger the lives and safety of the public in violation of G.L.c. 90, §24L(i)] and (2) the lesser included offense of causing serious bodily injury by reason of operating recklessly or negligently so as to endanger the lives and safety of the public but not while under the influence of intoxicating liquor].
On the afternoon of the following day, Tuesday November 28, 2000, the court received a note from the jury that indicated that they were unable to reach a verdict. Deliberations were suspended and the jury was instructed to return the following morning. The court convened a conference with counsel. The court indicated and counsel agreed that the original instructions were not proper in that one of the so-called lesser included offense instructions with regard to Indictment No. 0077CR138 was not a crime under G.L.c. 90, §24L.[1] Furthermore, the court decided that based on the evidence offered at trial, it had improperly restricted the jury’s consideration of lesser included offenses and that the jury should have options to return verdicts of guilty of lesser included offenses that did not require proof that the defendant had caused a death or serious bodily injury to another. The court informed counsel of its plan to re-instruct the jury fully in the morning and to give the jury the option of considering additional lesser included offenses.[2] Additionally, because of a concern that counsel might have organized their closing arguments differently if they were aware that additional lesser included offenses would be available to the jury, the court ordered that each attorney be given an opportunity to make a further closing argument.[3]
On Wednesday morning, November 29, 2000, the court gave the jury a complete set of final instructions which included the following statement:
Ladies and Gentlemen, following receipt of your note late yesterday afternoon indicating you had reached an impasse in your deliberations, and after consultation with the attorneys, I have decided to instruct you again with clarifications about some matters and with some additional so-called lesser included offenses to consider.
The decision to give you these additional instructions is solely mine. It should not be understood by any of you as an indication that you should or should not reach a verdict of guilty or not guilty on any of the charges that are before you in this case. These instructions are designed to give you what I now believe to be an accurate statement of the law that is applicable to this case. Any decision or verdict you reach in this case must be based on the admissible evidence and these instructions.
In fairness to both sides, I believe that I should read the entire charge to you with the changes that I believe are appropriate. What follows are my final instructions which I direct you to apply to the facts you find in this case.
Following the instructions,[4] the court also provided the jury with revised verdict slips which had been reviewed and approved by counsel. Under the revised instructions, the jury had the following options with regard to Indictment No. 0077CR137 charging Motor Vehicle Homicide: (1) Not Guilty; (2) Guilty as charged; (3) Guilty, lesser included offense of Motor Vehicle Homicide Not Operating Under the Influence of Intoxicating Liquor; (4) Guilty, lesser included offense of Motor Vehicle Homicide Not Operating Recklessly or Negligently; (5) Guilty, lesser included offense of Operating Under the Influence of Intoxicating Liquor; and (6) Guilty, lesser included offense of Operating Recklessly or Negligently. With regard to Indictment No. 0077CR138, the jury had the following options: (1) Not Guilty; (2) Guilty as charged; (3) Guilty, lesser included offense of Serious Bodily Injury Not Operating Recklessly or Negligently; (4) Guilty, lesser included offense of Operating Under the Influence of Intoxicating Liquor; and (5) Guilty, lesser included offense of Operating Recklessly or Negligently.
Following several additional hours of deliberations, the jury sent a note to the court indicating that they were unable to reach a verdict. Deliberations again were suspended for the day and the jury was instructed to return in the morning. On November 29, 2000, after consultation with counsel and a determination by the court that the jury had not reported that they were unable to reach a verdict two times after due and thorough deliberations, see G.L.c. 234, §34, the court instructed the jury further in accordance with the revised version of the instruction set forth in Commonwealth v. Tuey, 8 Cush. 1, 2-3 (1851), as approved in Commonwealth v. Rodriguez, 364 Mass. 87, 101-103 (1973). The jury retired to their deliberations, but after several more hours reported that they were deadlocked.
The court conferred with counsel with respect to the declaration of a mistrial. Defense counsel requested that the court inquire of the jury as to whether they had reached any partial verdicts. The Commonwealth requested that the court simply declare a mistrial. The court considered the high level of preparation exhibited by both the prosecutor and defense counsel, the thoroughness with which they had presented the evidence and cross-examined the witnesses, and the careful attention which the jury appeared to have paid *711 to the evidence and the court’s instructions, the public interest in the resolution of any charges as to which the jury had found the facts and reached unanimous agreement, the defendant’s interest in not facing trial a second time on any charges as to which the jury had agreed on a unanimous verdict of not guilty, and decided that if this jury had reached partial verdicts they should be received and recorded.
The court reconvened with the jury.[5] In open court, the court read back to the jury their last communication indicating that they were unable to agree upon a verdict. The court instructed the jury that they were not required to reach a verdict of guilty or not guilty as to any of the charges involved in this case. The court then addressed the Foreperson and asked her, as to any of the charges that the jury had considered, whether the jury had agreed unanimously on a verdict of guilty or not guilty. She replied “Yes.” The court then proceeded to inquire further of the Foreperson with regard to Indictment No. 0077CR0137 by asking whether as to the crime charged, Motor Vehicle Homicide, the jury had reached a unanimous verdict of guilty or not guilty. She replied “Yes.” The court then instructed the jury to return to the deliberating room and, if they had agreed on a verdict as to the charge of Motor Vehicle Homicide, to record their verdict. The court instructed the jury how to record such a verdict. The court stated that if the verdict was "Guilty” the jury should mark the appropriate box on the verdict slip. If the verdict was “Not Guilty” as to that particular charge the jury should leave the verdict slip blank.[6] In a few minutes, the jury returned. The verdict slip was handed up to the court and was blank. The clerk inquired of the jury and the Foreperson indicated that the jury had agreed upon a verdict of “Not Guilty” as to that charge (Homicide by Motor Vehicle) and the remaining jurors acknowledged that that was their unanimous verdict. At the request of the Commonwealth the jury was polled and each member of the jury stated without hesitation or equivocation that his or her verdict on the charge of homicide by motor vehicle was “Not Guilty.”
This same procedure was followed with regard to the lesser included offense of Motor Vehicle Homicide, Not Operating Recklessly or Negligently. Again, the foreperson responded to the court’s inquiry in open court by stating that the juiy had reached a unanimous verdict on this charge. The jury retired to the deliberating room and recorded their verdict in accordance with the same instruction given earlier. The jury returned to open court and the foreperson again answered the clerk’s inquiry that the jury had agreed upon a verdict, and stated that it was “Not Guilty” to this lesser included offense. Collectively, the remaining jurors again acknowledged that their verdict was “Not Guilty” on this charge. The verdict slip again had been left blank. Finally, with regard to the lesser included offense of Homicide by Motor Vehicle, Not Operating Under the Influence of Alcohol, the foreperson responded to the court’s inquiry in open court by stating that the jury had not reached a unanimous verdict. At this point the court inquired no further on Indictment No. 0077CR137.
The court followed the same procedure with regard to Indictment No. 0077CR128. After the foreperson stated that the jury had reached a unanimous verdict on that charge, the court directed the jury to retire and record their verdict. The jury returned to open court after a few moments and the foreperson answered the clerk’s inquiry by reporting that the jury had reached a verdict of “Not Guilty.” The remaining jurors acknowledged that their verdict was “Not Guilty” on this charge. The same procedure resulted in a verdict of “Not Guilty” with regard to the lesser offense of Serious Bodily Injury, Not Operating Recklessly or Negligently and this verdict was recorded in the same manner.[7] At this point, the court ordered the verdicts of the jury to be recorded and declared a mistrial as to the remaining charges.[8]
DISCUSSION
1. The jury returned valid, partial verdicts as to several of the charges. Mass.R.Crim.P.27(b) provides as follows:
If there are two or more offenses or defendants tried together, the jury may, with the consent of the judge at any time during its deliberations return or be required by the judge to return a verdict or verdicts with respect to the defendants or charges as to which a verdict has been reached; and thereafter the jury may in the discretion of the judge resume deliberation. The judge may declare a mistrial as to any charges upon which the jury cannot agree upon a verdict; provided, however, that the judge may first require the jury to return verdicts on those charges upon which the jury can agree and direct that such verdicts be received and recorded.
The second sentence of Rule 27(b) authorizes the court to exercise discretion to require the jury “to return verdicts on those charges upon which the jury can agree” and then to receive and record those verdicts before declaring a mistrial. See In re Ford, 987 F.2d 334, 340-41, cert. den. 506 U.S. 862 (6th Cir. 1992) (interpreting and applying the same provision of Rule 31 of the Federal Rules of Criminal Procedure on which Mass.R.Crim.P. 27 was based); Whiteaker v. State, 808 P.2d 270, 273-74 (Alaska App. 1991) (a partial verdict within the meaning of Rule 31(b) of the Alaska Rules of Criminal Procedure encompasses a verdict of not guilty of one or more of the greater charges in an indictment as to which the jury is deadlocked on a lesser charge). Rule 27(b) recognizes the discretionary authority of the trial judge to require the jury to return partial verdicts as to any charges that were submitted to them, provided that the jury has reached a unanimous agreement as opposed to “only a conditional or tentative agreement.” See Com *712 monwealth v. Floyd, 415 Mass. 826, 830 (1993). See also Commonwealth v. LaFontalne, 32 Mass.App.Ct. 529, 535 (1992). See generally K.B. Smith, Criminal Practice and Procedure §1971 (2ded. 1983) (trial judge has the right to request the return of partial verdicts and then declare a mistrial if the jury is unable to agree as to the remainder of the charges); Massachusetts Superior Court Criminal Practice Manual §21.3.2 (MCLE) (same). The discretion to receive a partial verdict exists whether or not the jury has reached agreement as to a guilty finding on any of the charges submitted to them. See United States v. Nelson, 599 F.2d 714 (5th Cir. 1979).[9]
In the present case, the court made no inquiry of the jury until after they had engaged in extensive deliberation over the course of three days and reported an inability to reach a verdict. The court prefaced its inquiry about partial verdicts by specifically instructing the jury that they were under no obligation to reach a verdict of guilty or not guilty. The jury was given an opportunity to return to the deliberating room to discuss whether or not they had reached a unanimous verdict before they were inquired of about their verdict. As the Supreme Judicial Court noted in Commonwealth v. Foster, 411 Mass. 762, 766 (1992), reversing 30 Mass.App.Ct. 588 (1991), “members of the jury are presumed to obey the instructions of the judge. Here the court’s additional instructions explicitly required the jury to return only those verdicts which were unanimous and complete.”
2. The reservations expressed by the Supreme Judicial Court in A Juvenile v. Commonwealth, 392 Mass. 52 (1984), are not applicable in this case. The Commonwealth relies principally on A Juvenile v. Commonwealth, 392 Mass. 52, habeas corpus den. sub nom., Doe, petitioner, 747 F.2d 42 (1st Cir. 1984), where, prior to the decision in Commonwealth v. Foster, supra, the Supreme Judicial Court expressed doubts about the validity of partial verdicts. In that case, a juvenile was charged with delinquency by reason of murder and delinquency by reason of unlawful possession of a firearm. The four charges set forth in four separate verdict slips were given to the jury — murder in the first degree, murder in the second degree, manslaughter, and the firearms violation. After several days of deliberations, the jury reported that they were unable to reach a verdict on the complaint charging murder, but had reached a verdict on the other complaint. The court received the verdict of delinquency by reason of unlawful possession of a firearm and declared a mistrial as to the other charge without inquiring into whether the jury had reached any partial verdicts on that complaint.
Later, it was brought to the court’s attention that the verdict slips for the charges of delinquency by reason of murder in the first degree and murder in the second degree, signed by the foreman and marked “not guilty,” had been recovered from the jury deliberation room after the conclusion of the trial, but were not brought to the attention of the court for several weeks or months. Prior to the retrial of the case, the juvenile argued that he should not be required to face trial again because the trial judge was under an obligation to inquire whether the juiy had reached partial verdicts, and that the discovery of the marked and signed verdict slips should be taken as conclusive evidence that he had been acquitted of the murder charge.
There are two parts to the holding in A Juvenile, supra. First, the Supreme Judicial Court declined to impose or recognize a duty on the part of a trial judge in such a case to inquire of the jury about the status of any lesser included charges. Id., 392 Mass. at 55. Second, the court held that the jury in that case had not reached any verdicts as to the charge of delinquency by reason of murder because “(t]he only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open and public verdict, given in and assented to, in open court, as the unanimous act of the jury, and affirmed and entered of record, in the presence and under the sanction of the court.” Id. at 56, quoting Lawrence v. Stearns, 11 Pick. 501, 502 (1831).
In reaching the conclusion that a trial judge is under no obligation to inquire about the status of lesser included charges, the Supreme Judicial Court noted that the reference to a “general verdict” in Rule 27(a) of the Massachusetts Rules of Criminal Procedure “is a verdict dispositive of the entire charge . . . and not a partial verdict.” Id., 392 Mass. at 55. The court also added the following observation which is the linchpin of the Commonwealth’s argument in this case: “We agree with the Commonwealth’s argument that no Massachusetts case holds that a verdict as to part of the charge, where the jury are unable to agree on the remainder of the complaint, can constitute a general verdict.” Id. at 56. Apart from the fact that this observation, which was not essential to the holding in A Juvenile, does not take into consideration the express authorization for a partial verdict in Rule 27(b), as recognized in Commonwealth v. Foster, supra, and under the federal rules of criminal procedure, as noted in In re Ford, supra, it rests on two underlying concerns that are not present in the circumstances of this case. First, that any inquiry by the court regarding partial verdicts would constitute an unwarranted intrusion into the deliberative process of the jury. Second, that such verdicts may reflect nothing more than a tentative compromise by the jury in an effort to reach unanimity. A Juvenile, supra at 56, quoting People v. Hickey, 103 Mich. App. 350, 353 (1981), and People v. Griffin, 66 Cal.2d 459 (1967). In People v. Hickey, supra, the Michigan court simply held that when a jury reports it is deadlocked, before declaring a mistrial, the trial judge was not under an obligation to inquire whether the jury reached a unanimous verdict on any lesser included charges. The court offered no analysis *713 or explanation for its observation that such an inquiry would constitute an unwarranted and unwise intrusion into the province of the jury.[10] Instead, the court relied principally on the decision of the California Supreme Court in People v. Griffin, supra.
In Griffin, the defendant was tried for a second time on a charge of murder in the first degree following a successful appeal to the United States Supreme Court. A mistrial was declared after the jury reported it was unable to reach a unanimous verdict. In open court, the foreman reported that the jury stood 10 for acquittal and 2 for conviction of murder in the second degree. At the third trial, the defendant was found guilty of first degree murder. On appeal, he argued that he had been impliedly acquitted of that charge by the jury in the second trial. This argument was rejected with this observation: “We may not infer from the foreman’s statement that the jury had unanimously agreed to acquit of first degree murder. There is no reliable basis in fact for such an implication, for the' jurors had not completed their deliberations and those voting for second degree murder may have been temporarily compromising in an effort to reach unanimity.” Griffin, supra, 66 Cal.2d at 464. However, Stone v. Superior Court, 31 Cal.3d 503 (1982), provided the California Supreme Court with an opportunity to explain its decision in Griffin, and to differentiate between a valid partial verdict and a speculative verdict where no verdict exists at all.
In Stone, the defendant was charged with murder and the case was submitted to the jury on the basis of murder in the first degree; murder in the second degree; voluntary manslaughter; and involuntary manslaughter. After seven days of deliberations, the jury reported they were unable to reach a unanimous verdict. As a result of a stipulation between the prosecution and the defense, the court made an inquiry of the jury to determine their position. The jury reported: “no votes” for first and second degree murder; four votes for voluntary manslaughter; two votes for involuntary manslaughter; six votes for justifiable homicide;[11] and no votes for acquittal. After instructing the jury to return to their deliberations, they returned a day and one half later and reported: “no votes” again for first and second degree murder; three votes for voluntary manslaughter; five votes for involuntary manslaughter; four votes for justifiable homicide; and no votes for acquittal. A mistrial was declared.
On appeal, the California Supreme Court distinguished its earlier holding in People v. Griffin on the grounds that it was not possible to ascertain whether the jury had actually agreed on a unanimous verdict.
The primary concern of the Griffin court was to insure that a verdict represents the definite and final expression of the jury’s intent with respect to the disposition of the factual issues presented by a particular case. The members of the jury in Griffin never gave any indication of a final intent to acquit the defendant of the murder charge . . . Here, by contrast, the foreman twice declared — prior to discharge, in open court, and in the presence of the other jurors — that the jury stood firmly and finally 12 to nothing in favor of acquittal of both degrees of murder. The court then made a factual and a legal ruling to the same effect. In these circumstances there is no realistic basis for the sheer speculation that the jurors may have been merely “temporarily compromising in an effort to achieve unanimity.” Thus, although clear and uncontradicted evidence revealed that the jury was prepared to render a partial verdict of acquittal of murder and the court was inclined to accept the verdict, it was only the lack of an established procedure for giving formal effect to the jury’s conclusion that prevented the court from receiving such a verdict. Because of these compelling circumstances, we conclude the jury’s obvious intent should be recognized here by holding that defendant was in fact acquitted of murder.
Stone v. Superior Court, supra,[12]
In the present case, as in Stone, the court did not make any inquiry of the jury until after the jury had an opportunity to thoroughly consider the charges and until they had reported that they were unable to reach a verdict. In the present case, the court was informed by the foreperson, in terms even more direct than in Stone, that the jury had reached unanimous verdicts with regard to some of the charges. Here, the jury was given an opportunity to return to the deliberating room to ensure that the foreperson was indeed speaking for all the members of the jury in reporting their unanimous agreement. See Mass.R.Crim.P. 27(d). After the jury had an opportunity to consider the foreperson’s statement, the jury expressed its unanimous verdicts in open court in the traditional fashion and without any equivocation. See Commonwealth v. Tobin, 125 Mass. 203, 208 (1878); Lawrence v. Stearns, 11 Pick. 500, 501 (1831). See also Mass.R.Crim.P. 28(a).
The appellate courts have provided guidance to trial judges to avoid the danger of coercive inquiry or improper participation in the deliberations of the jury. A “dispassionate, neutral, judicial effort to obtain clarity” about the vote of a juror is permitted, while any attempt to affect the judgment of a juror or the jury is prohibited. Commonwealth v. Liakos, 12 Mass.App.Ct. 57, 63 (1981). A judge crosses the line between enlightening the jurors’ understanding and coercing them when ‘he overcomes their will by the weight of his authority.’ “ Commonwealth v. Diaz, 19 Mass.App.Ct. 29, 34 (1984), quoting Horning v. District of Columbia, 254 U.S. 135, 139 (1920) (Brandeis, J., dissenting). ”A judge has no authority to direct a verdict when there are issues of fact to be resolved. He may, however, question a juror in a limited way in order to understand whether a juror’s answers show that the juror agrees with the verdict as announced *714 . . . Moreover, any questioning of a juror must be neutral and not coercive or otherwise calculated to affect the juror’s judgment." Commonwealth v. Herbert, 379 Mass. 752, 755 (1980). In Herbert, the Supreme Judicial Court held that the trial judge exceeded the bounds of neutral inquiry when in reply to the statement of a juror who had answered that her vote was “qualified,” he expressed his view of the sufficiency of the evidence and asked her whether she was satisfied that the Commonwealth had proved a particular charge beyond a reasonable doubt. The court reasoned that “[i]n this case to the very end, the unconvinced juror felt in good conscience that she could not find the defendant guilty. In such a case, there was no unanimous verdict.” Id. at 756.
In the present case, the court did not engage in any sort of biased, or intrusive inquiry into the deliberative process of the jury so as to give rise to the concern expressed by the Supreme Judicial Court in A Juvenile. See United States v. Ross, 626 F.2d 77, 80-81 (9th Cir. 1980) (following jury’s report of a deadlock, trial judge asked appropriate questions that elicited a valid partial verdict). There is no evidence that the jury was coerced into reaching a verdict. See Commonwealth v. Purchase, 2 Pick. 520, 524-25 (1824) (describing the privations endured by English juries in ancient times in an effort to produce a verdict). Furthermore, the conduct of the jury in this case in expressing their unanimous verdicts does not leave any doubt that they had reached unanimous agreement as to certain charges. Contrast Walters v. State, 503 S.W.2d 895 (Ark. 1974) (defendant sought to set aside his second degree murder conviction based on evidence that after his first trial a colloquy took place between the jury foreman and the judge in which the foreman reported that the jury were deadlocked “7 to 5" and that they were divided between involuntary manslaughter and not guilty; court rejects claim that first trial resulted in implied acquittal of all degrees of homicide above involuntary manslaughter because statements between trial judge and jury foreman cannot be considered a verdict); People v. Hall, 324 N.E.2d 50 (Ill. App. 1975) (defendant sought to establish his acquittal on the charge of murder after his first trial ended in a hung jury by offering affidavits of two jurors who stated that the jury was deadlocked 11 for guilty of manslaughter and one not guilty; “we cannot inquire into minds of the jurors who sat in the first case to determine their mental attitude or reasoning process’’); State v. Wardlow, 624 P.2d 527 (N.M. 1981) (when, in accordance with New Mexico procedure, the court inquired of a deadlocked jury, a colloquy with the foreman revealed that the jury was deadlocked as to the greater charge, but believed that the lesser charge was "inappropriate"; in these circumstances the court acted properly in declaring a mistrial with the result that the defendant could be prosecuted again on both charges); Speaks v. United States, 617 A.2d 942 (1992) (defendant’s retrial on charge of murder in the first degree was not barred by evidence that following a mistrial and the discharge of the jury the foreperson reported that the jury had voted 12-0 to find the defendant not guilty of murder in the first degree and were deadlocked on the charge of murder in the second degree; court suggests outcome turns on the fact that post-discharge revelations by jurors are not a substitute for a verdict, and attaches significance to the fact that the defendant did not request an inquiry about whether the jury had reached any partial verdicts prior to their discharge).
3. To decline a request by the defendant for an inquiry of a deadlocked jury about whether they had reached a unanimous agreement as to any of the charges they considered implicates the prohibition against double jeopardy. Both our common law and federal constitutional law restrict a trial judge from granting a mistrial unless there is a “manifest necessity" for doing so. In fashioning this standard, Justice Story wrote, in an often quoted passage from his famous decision in United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824), that the power to grant a mistrial “ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases.” Although in the Perez case the Supreme Court concluded that a mistrial granted as a result of a jury’s inability to reach a verdict was an example of “manifest necessity,” it is not obvious that that should be true in all circumstances. At a minimum, the court must hear from the defendant and consider the alternatives to a mistrial before it acts. Commonwealth v. Steward, 396 Mass. 76, 79 (1985). Otherwise, the court fails to honor the defendant’s “valued right to have his trial completed by a particular tribunal.” Wade v. Hunter, 336 U.S. 684, 689 (1949). See Arizona v. Washington, 434 U.S. 497, 506 (1978) (acknowledging that there are degrees of necessity, and that a mistrial without the consent of the defendant requires a “high degree” of necessity). “In making this determination, a trial judge ‘must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.’ ” Barton v. Commonwealth, 385 Mass. 517 (1982), quoting United States v. Jorn, 400 U.S. 470, 486 (1971).[13]
In Commonwealth v. Burke, 342 Mass. 144 (1961), the Supreme Judicial Court held that the common law and federal constitutional prohibition against putting a person twice in jeopardy for the same offense served to bar the Commonwealth from prosecuting a defendant a second time for murder in the second degree. This followed his first trial which ended with the jury returning a verdict of not guilty of second degree murder, but guilty of manslaughter in circumstances in which the defendant appealed his first conviction and obtained a new trial. The court reasoned that the defendant’s acquittal on so much of the indictment as *715 charged murder in the second degree after the first trial was independent of and unaffected by the conviction of manslaughter even though the latter arose out of the same indictment. Id. at 148-49. The court explained that in a case involving a single indictment, a jury verdict of not guilty of the greater offense but guilty of a lesser included offense was tantamount to separate verdicts on two different counts. The court harmonized this result with the terms of G.L.c. 278, §12 which reads as follows: “If a person indicted for a felony is acquitted by the verdict of part of the crime charged, and is convicted of the residue, such verdict maybe received and recorded by the court, and thereupon the defendant shall be adjudged guilty of the crime, if any, which appears to the court to be substantially charged by the residue of the indictment, and shall be sentenced and punished accordingly.” In Burke, the court observed that “[t]his statute apparently contemplates a single verdict which in a case like the present would commonly be returned in the form ‘Guilty of so much of the indictment as charges manslaughter.’ We think that when as here two verdicts are received the statute should be construed as authorizing the recording of both verdicts.” Id. at 148.
The same principle that led the Supreme Judicial Court in Burke to recognize that a second prosecution of a defendant on that portion of an indictment as to which he has been found not guilty in circumstances in which he was found guilty of a lesser included offense, would contravene the prohibition against double jeopardy. This should give rise to grave concerns about any further prosecution of the defendant on any of the charges in this case because the jury reached unanimous agreement on and reported not guilty verdicts in open court. This concern was passed over in A Juvenile, supra, where the court characterized Burke as involving a simple application of G.L.c. 278, §12. However, there is no principled reason to assign independent legal significance, for double jeopardy purposes, to a not guilty verdict as to a greater offense contained in an indictment that also charges one or more lesser included offenses as to which the jury returns a verdict of guilty, in accordance with G.L.c. 278, §12, while, at the same time, to deny that a jury’s unanimous agreement that a defendant is not guilty of a greater offense contained in an indictment that also charges one or more lesser included offenses, as to which the jury is deadlocked, has independent legal significance. Such a prosecution would be contrary to the legislative declaration that a person shall not be required to face a second prosecution “for a crime of which he has been acquitted upon the facts and merits.” G.L.c. 263, §7. “There is no acceptable reason why the state should have a second opportunity to convince a jury of facts necessary to secure a conviction of a crime. Indeed, one of the purposes of the Double Jeopardy Clause is to prevent the state from having such a second chance.” Wallace v. Havener, 552 F.2d 721, 724 (6th Cir. 1977). Similarly, in Commonwealth v. Clemmons, 370 Mass. 288, 293 (1976), the Supreme Judicial Court observed that “a prosecutor or a judge may not subject the defendant to a second prosecution by discontinuing a trial in order to afford the prosecution a more favorable opportunity to convict.”
Double jeopardy considerations have led some courts to require the trial judge, sua sponte, to inquire of a jury about partial verdicts upon learning that they are deadlocked and prior to declaring a mistrial. See, e.g., State v. Castrillo, 90 N.M. 608 (1977); Stone v. Superior Court, 31 Cal.3d 503 (1982). These cases turn on an understanding of double jeopardy principles that precludes a finding that there is a manifest necessity warranting a mistrial following a report that the jury is deadlocked until an inquiry has been made of the jury about whether they have reached unanimous agreement on any of the charges they have considered. Other courts have held that an inquiry about partial verdicts must be made whenever the defendant requests it in order to meet the manifest necessity standard that is required in order for the defendant to be prosecuted for the same offense following the declaration of a mistrial. See State Pugliese, 422 A.2d 1319 (N.H. 1980); Whiteaker v. State, 808 P.2d 270 (Alaska App. 1991). See also State v. Halsey, 232 Neb. 658 (1989); State v. Seagroves, 691 S.W.2d 537 (Term. 1985); State v. Russell, 101 Wash.2d 349 (1984); People v. Krogul, 115 Ill.App.3d 734 (1983); Speaks v. United States, 617 A.2d 942 (D.C.Sup.Ct. 1992) (by implication).
As the Supreme Court of New Hampshire observed in a case in which an inquiry about the possibility of partial verdicts was not made despite the defendant’s request:
Not only did the trial court fail to expressly find a manifest necessity, but no such necessity could have been found. Nor would the ends of public justice have been defeated by simply asking the jury if they had reached a verdict on the manslaughter charge. If the answer had been in the negative, there would then have been a basis for the mistrial. If the answer had been that the jury had agreed on acquittal, then the defendant’s “valued right” would have been upheld. There was no necessity at all, much less a high degree of necessity, to declare a mistrial before making the inquiry requested. All possible alternatives to a mistrial must be considered, employed and found wanting before declaration of a mistrial over the defendant’s objection is justified.
State v. Pugliese, supra at 1321.
It is not necessary to further consider the constitutional issues that have arisen in these decisions from other jurisdictions because this case involves an exercise of the court’s discretion under Rule 27(b) of the Massachusetts Rules of Criminal Procedure.
*716 ORDER
As trial judges, we customarily instruct the jury in a criminal case that if they are satisfied that the Commonwealth has proved a charge beyond a reasonable doubt, they should return a verdict of guilty, but that if they are not so satisfied, they must return a verdict of not guilty. See, e.g., Model Jury Instructions On Homicide Approved and Recommended by the Supreme Judicial Court, Instruction 11 (jury has a duty to find the defendant guilty of the most serious offense which the Commonwealth has proved beyond a reasonable doubt; “if the evidence does not prove beyond a reasonable doubt that the defendant is guilty of any offense charged, you must find him not guilty”). The position taken by the Commonwealth in this case is that the court should enforce this instruction in order to record convictions, but not acquittals. Rule 27(b) of the Massachusetts Rules of Criminal Procedure should not be read in such a one-sided manner. When, after trial, a properly instructed jury considers a criminal charge and declares by unanimous agreement that the defendant is not guilty, that verdict should be received and recorded by the court, and should bar further prosecution of the defendant for the same charge regardless of whether the jury is able to reach unanimous agreement as to any remaining charges.
For the above reasons, the Commonwealth’s Motion To Vacate Entry of Partial Verdicts is hereby DENIED. Further proceedings in the trial court shall be stayed for thirty days to afford the Commonwealth an opportunity to apply for appellate judicial review of this decision.

Under G.L.c. 90, §24L, the lesser included offense involving serious bodily injury requires proof of operating under the influence of alcohol, but not operating so as to endanger. Thus, under the court’s original instructions with regard to Indictment No. 0077CR138, a verdict of guilty on the so-called lesser included offense would have been tantamount to a verdict of guilty of nothing more than simple operating to endanger under G.L.c. 90, §23.

Here, the court relied on Commonwealth v. Thayer, 418 Mass. 130 (1994), where the trial judge decided to re-instruct the jury on an additional, lesser included offense on the second day of deliberations. Out of an abundance of caution, in the present case, the court re-instructed the jury in all respects, not simply with regard to the lesser included offenses.

The defendant assented to this plan to afford counsel an opportunity to make a further closing argument, but the Commonwealth objected. Nonetheless, each of the attorneys delivered further closing arguments to the jury on November 29, 2000.

A complete set of the instructions, in writing, was provided to the jury. They were marked for identification, and are part of the record in this case.

Following the filing of the Commonwealth’s motion, the court has ordered preparation of a transcript of this portion of the trial.

The verdict slips are included in the record. The reason for the instructions about how to record the verdict stems from the fact that the verdict slip have only one place for the jury to record a verdict of “not guilty” but contain multiple places for the jury to record verdicts of guilty of each of the various charges on which they were instructed. In other words, if the jury had reached a verdict of “not guilty” on some but not all of the charges before them, the verdict slip as drafted did not provide the jury with a way to record such a result. The problem might have been avoided if the court had submitted separate verdict slips containing a “guilty” and "not guilty” alternative for each of the possible charges that were covered by the court’s instructions, and had added an appropriate instruction suggesting that the jury begin with the greater offenses and proceed to the lesser included offenses only if they had agreed unanimously on a verdict of “not guilty” as to each such greater offense. Compare Commonwealth v. Johnson, 399 Mass. 14, 17 (1987).

As noted above, once the foreperson reported that the jury had not reached a unanimous verdict, the court ceased any further inquiry. Logically, the court perhaps should have inquired specifically about whether the jury had reached a unanimous verdict on the lesser included offense of operating under the influence of intoxicating liquor under Indictment No.0077CR0138. However, to avoid even the appearance of coercion or intrusion into the deliberative process, the court did not inquire as to this charge.

On Indictment No. 0077CR0137, the remaining charges to be tried are: (1) Homicide by Motor Vehicle, Not Operating Under the Influence of Intoxicating Liquor; (2) Operating Under the Influence of Intoxicating Liquor; and (3) Operating Recklessly or Negligently so as to Endanger. On Indictment No. 0077CR0138, the remaining charges to be tried are: (1) Operating Under the Influence of Intoxicating Liquor; and (2) Operating Recklessly or Negligently so as to Endanger.

Instructions such as those given by the court in this case have been recommended for use in federal courts in conformance with Rule 31(b) of the Federal Rules of Criminal Procedure. See, e.g., K.F. O’Malley & Hon. W.C. Lee, Federal Jury Practice and Instructions §20.06 (Partial Verdicts) (5th ed. 2000); Pattern Criminal Instructions: Sixth Circuit §9.03 (1991 ed.).

The point certainly has force in other circumstances such as a partial verdict on a so-called lesser included offense charged in an indictment when the juiy is deadlocked on the greater offense. See Whiteaker v. State, 808 P.2d 270, 275 n. 6 (Alaska App. 1991).

In Stone, the court noted that there did not seem to be any reason for submitting the case to the jury on the basis of “justifiable homicide” since that would constitute a verdict of not guilty.

An appropriate pattern jury instruction for this purpose has been developed for use in California. See California Jury Instructions: Criminal §8.75 (Committee on Standard Jury Instructions of the Superior Court of Los Angeles County) (West Pub. 1988-96).

It may be argued that in the circumstances of this case the defendant’s interest in concluding his confrontation with the state was not significant because a mistrial of some sort was unavoidable and thus a retrial of the case would be required. However, it was entirely possible that the jury might have returned partial verdicts of not guilty on all the felony charges leaving the defendant to face only misdemeanor charges that may have been disposed of by a plea of guilty.